558 So.2d 9 (1990)
FIRST FLORIDA BANK, N.A., etc., Petitioner,
v.
MAX MITCHELL & COMPANY, et al., Respondents.
No. 74034.
Supreme Court of Florida.
March 8, 1990.
*10 Robert W. Clark of Macfarlane, Ferguson, Allison & Kelly, Tampa, for petitioner.
John N. Jenkins and Debra L. Hinners of Marlow, Shofi, Smith, Hennen, Smith & Jenkins, P.A., Tampa, for respondents.
Gerald F. Richman, Michael A. Hanzman and Sally R. Doerner of Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh, P.A., Miami, amici curiae for Vaughn Durham, et al.
Kenneth R. Hart and Steven P. Seymoe of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, amicus curiae for Florida Institute of Certified Public Accountants.
Alberto A. Macia and Allen P. Reed of Shea & Gould, Miami, amicus curiae for Pannell Kerr Forster.
GRIMES, Judge.
We review First Florida Bank v. Max Mitchell & Co., 541 So.2d 155, 157 (Fla.2d DCA 1989), in which the court certified the following question as one of great public importance:
WHEN AN ACCOUNTANT FAILS TO EXERCISE REASONABLE AND ORDINARY CARE IN PREPARING THE FINANCIAL STATEMENTS OF HIS CLIENT AND WHERE THAT ACCOUNTANT PERSONALLY DELIVERS AND PRESENTS THE STATEMENTS TO A THIRD PARTY TO INDUCE THAT THIRD PARTY TO LOAN TO OR INVEST IN THE CLIENT, KNOWING THAT THE STATEMENTS WILL BE RELIED UPON BY THE THIRD PARTY IN LOANING TO OR INVESTING IN THE CLIENT, IS THE ACCOUNTANT LIABLE TO THE THIRD PARTY IN NEGLIGENCE FOR THE DAMAGES THE THIRD PARTY SUFFERS AS A RESULT OF THE ACCOUNTANT'S FAILURE TO USE REASONABLE AND ORDINARY CARE IN PREPARING THE FINANCIAL STATEMENTS, DESPITE A LACK OF PRIVITY BETWEEN THE ACCOUNTANT AND THE THIRD PARTY?
Our jurisdiction is based on article V, section 3(b)(4), of the Florida Constitution.
Max Mitchell is a certified public accountant and president of Max Mitchell and Company, P.A. In April of 1985, Mitchell went to First Florida Bank for the purpose of negotiating a loan on behalf of his client, C.M. Systems, Inc. Mitchell advised Stephen Hickman, the bank vice president, that he was a certified public accountant and delivered to Hickman audited financial statements of C.M. Systems for the fiscal years ending October 31, 1983, and October 31, 1984, which had been prepared by his firm. The October 1, 1984, audited statement indicated that C.M. Systems had total assets of $3,474,336 and total liabilities of $1,296,823. It did not indicate that C.M. Systems owed money to any bank, and in a later conference with Hickman, Mitchell stated that as of April 16, 1985, C.M. Systems was not indebted to any bank. At that time, Mitchell asked Hickman to consider a $500,000 line of credit for C.M. Systems.
Over the next several weeks, Mitchell had numerous discussions with Hickman concerning various line items in Mitchell's audit of C.M. Systems. Mitchell represented that he was thoroughly familiar with the financial condition of C.M. Systems. On May 23, 1985, Hickman asked Mitchell for interim financial statements for the period which ended on April 30, 1985. Mitchell advised that they would not be available for several more weeks. Hickman asked Mitchell if there had been any material *11 change in the company's financial condition since October 31, 1984, and Mitchell said that he was not aware of any material changes. On June 6, 1985, the bank approved the request for a $500,000 unsecured line of credit to C.M. Systems. Thereafter, C.M. Systems borrowed the entire amount of the $500,000 credit line which it has never repaid.
Subsequently, the bank discovered that the audit of C.M. Systems for the fiscal year ending October 31, 1984, had substantially overstated the assets, understated the liabilities, and overstated net income. Among other things, the audit failed to reflect that as of October 31, 1984, C.M. Systems owed at least $750,000 to several banks. In addition, several material changes had occurred in the company's balance sheet after the audit but prior to the approval of the line of credit.
The bank filed a three-count complaint against Mitchell and his firm. Because of the absence of privity between either Mitchell or his firm and the bank, the trial court granted Mitchell summary judgment on the negligence and gross negligence counts. The bank voluntarily dismissed the count based on fraud. Believing itself bound by prior decisional law of the state, the district court of appeal affirmed. Recognizing the public policy implications of the issue and the erosion of the privity doctrine in other areas of the law, the court posed the certified question for our consideration.
The seminal case on this subject is Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), authored by Justice Cardozo. In that case the court held that a lender which had relied upon inaccurate financial statements to its detriment had no cause of action against the public accounting firm which had prepared them because of the lack of privity between the parties. In declining to relax the requirement of privity, the court observed:
If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminant [sic] amount for an indeterminant [sic] time to an indeterminant [sic] class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.
Id. at 179-80, 174 N.E. at 444. The court distinguished its earlier decision of Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922), in which it had held that a public weigher was liable to the buyer of beans for the amount the buyer overpaid the seller in reliance on the weigher's erroneous certificate of weight. The court said that the use of the certificate was a consequence "which to the weigher's knowledge was the end and aim of the transaction," id. at 238-39, 135 N.E. at 275, and reasoned that, unlike the case before it, the bond between the weigher and the buyer "was so close as to approach that of privity, if not completely one with it." Ultramares, 255 N.Y. at 182-83, 174 N.E. at 446.
In purporting to reach a decision within the parameters of Ultramares and Glanzer, the New York Court of Appeals in Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 551, 483 N.E.2d 110, 118, 493 N.Y.S.2d 435, 443 (1985), recently explained the circumstances under which recovery may be accomplished by persons in "near privity":
Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.
In the more than fifty years which have elapsed since Ultramares, the question of an accountant's liability for negligence where no privity exists has been addressed *12 by many courts. There are now essentially four lines of authority with respect to this issue.
(1) Except in cases of fraud, an accountant is only liable to one with whom he is in privity or near privity. E.g., Toro Co. v. Krouse, Kern & Co., 827 F.2d 155 (7th Cir.1987); Nortek, Inc. v. Alexander Grant & Co., 532 F.2d 1013 (5th Cir.1976); Stephens Industries, Inc. v. Haskins & Sells, 438 F.2d 357 (10th Cir.1971); Shofstall v. Allied Van Lines, Inc., 455 F. Supp. 351 (N.D.Ill. 1978); MacNerland v. Barnes, 129 Ga. App. 367, 199 S.E.2d 564 (1973); Credit Alliance Corp. v. Arthur Andersen & Co.
(2) An accountant is liable to third parties in the absence of privity under the circumstances described in section 552, Restatement (Second) of Torts (1976), which reads in pertinent part:
§ 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
Courts which have adopted this position include Seedkem, Inc. v. Safranek, 466 F. Supp. 340 (D.Neb. 1979); Rusch Factors, Inc. v. Levin, 284 F. Supp. 85 (D.R.I. 1968); Badische Corp. v. Caylor, 257 Ga. 131, 356 S.E.2d 198 (1987); Spherex, Inc. v. Alexander Grant & Co., 122 N.H. 898, 451 A.2d 1308 (1982); Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co., 715 S.W.2d 408 (Tex. Ct. App. 1986).
(3) An accountant is liable to all persons who might reasonably be foreseen as relying upon his work product. E.g., International Mortgage Co. v. John P. Butler Accountancy Corp., 177 Cal. App.3d 806, 223 Cal. Rptr. 218 (1986); Touche Ross & Co. v. Commercial Union Ins. Co., 514 So.2d 315 (Miss. 1987); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983); Citizens State Bank v. Timm, Schmidt & Co., 113 Wis.2d 376, 335 N.W.2d 361 (1983).
(4) An accountant's liability to third persons shall be determined by
the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.
Biakanja v. Irving, 49 Cal.2d 647, 650, 320 P.2d 16, 19 (1958). See also Aluma Kraft Mfg. Co. v. Elmer Fox & Co., 493 S.W.2d 378 (Mo. Ct. App. 1973).
There are four prior Florida cases which have specifically addressed the issue before us. In Investment Corp. v. Buchman, 208 So.2d 291 (Fla. 2d DCA), cert. dismissed, 216 So.2d 748 (Fla. 1968), the plaintiff entered into a contract to buy corporate stock. Because the plaintiff had only seen an uncertified financial statement of the corporation, the contract included a provision under which the corporation would provide a certified financial statement. If it appeared from the certified financial statement that the corporation's financial position was substantially different from that shown on the uncertified statement, the plaintiff could rescind the purchase. The certified statement was subsequently delivered to the plaintiff and the plaintiff elected to stand by the transaction. Thereafter, the corporation failed financially, and *13 the plaintiff sued the accountant, asserting that the certified statement had grossly misstated the financial condition of the corporation and that it had relied on this information in electing not to rescind the purchase. The plaintiff asserted that the accountant knew that it intended to rely on the certified statement. In determining whether the absence of privity was fatal to the plaintiff's position, the Second District Court of Appeal referred to this Court's decision in Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (1940), in which we held that an abstracter's liability for negligence was limited to persons with whom there was privity of contract. Following the rationale of Sickler, the court held that in the absence of privity an accountant owed no duty of care to known third parties. Several years later, the Third District Court of Appeal also held that an accountant was not liable to third parties for negligence where there was no privity of contract. Investors Tax Sheltered Real Estate, Ltd. v. Laventhal, Krekstein, Horwath & Horwath, 370 So.2d 815 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 767 (Fla. 1980). The First District Court of Appeal followed suit in Gordon v. Etue, Wardlaw & Co., 511 So.2d 384 (Fla. 1st DCA 1987).
On the other hand, the Fourth District Court of Appeal has recently rendered an opinion acknowledged to be in conflict with both Gordon v. Etue, Wardlaw & Co. and the opinion which we now review in the instant case. Durham v. Palm Court, Inc., 558 So.2d 59 (Fla. 4th DCA 1990). In that case, it was alleged that a hotel corporation retained an accounting firm specializing in providing services to the hotel industry to prepare a "market demand report" and "a financial forecast and financial projection." The accounting firm knew that these documents would be used as exhibits to an offering memorandum which the hotel corporation intended to circulate to promote the sale of interests in the hotel. When the investment soured, parties who had relied upon the documents to purchase an interest in the hotel sued the accountants on theories of negligence, gross negligence, and breach of fiduciary duty. The trial court dismissed the complaint because of the absence of privity between the accountants and the purchasers. In reversing the order of dismissal, the appellate court made the following observations:
In an effort to sell some sixty-six condominium rooms in a former hotel to investors, the seller specifically employed the accountants to prepare documents for distribution, not only to their client, the seller, but also for the express purpose of including the distribution to potential purchasers. We are convinced, under the facts of this case, that the accountants cannot sit back blithely and escape liability because of lack of privity... .
... .
Our holding is limited to the facts sub judice and should not be construed as implying that a cause of action exists against every accounting firm that produces reports for individual clients, just because the reports are later read by third parties who allegedly rely on them. More, much more than that, is involved here.
Id., at 61, 62.
The doctrine of privity has undergone substantial erosion in Florida. Indeed, in cases involving injuries caused by negligently manufactured products the requirement that there be privity between the plaintiff and the manufacturer has been abolished. See West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). Further, this Court in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), held that a general contractor could sue an architect or engineer for damages proximately caused by their negligence on a building project despite the absence of privity of contract between the parties. The liability of a lawyer in the absence of privity has been limited to cases where the legal service negligently performed was apparently initiated by the lawyer's client to benefit a third party, such as in the drafting of a will. Angel, Cohen & Rogovin v. Oberon Inv., 512 So.2d 192 (Fla. 1987); McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976).
*14 Most significant, however, to the instant case is this Court's decision in First American Title Insurance Co. v. First Title Service Co., 457 So.2d 467 (Fla. 1984), which modified the Sickler requirement of privity for abstracters' negligence which had been relied upon in Buchman. In First American Title Insurance, we said:
The effect of our holding in this case will be to change the law of abstracter's liability, but not so drastically as the petitioner would have us change it. Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs, as we have said, not only to his customer but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser  such as lender-mortgagees, tenants and title insurers  will also be protected where the purchaser's reliance was known or should have been known to the abstracter. But a party into whose hands the abstract falls in connection with a subsequent transaction is not among those to whom the abstracter owes a duty of care.
Id. at 473. The opinion in First American Title Insurance is also important for the arguments which this Court rejected. We declined to approve the principle that an abstracter is liable in negligence to all persons who might foreseeably use and rely on the abstract. We also found unpersuasive the asserted analogy to cases of products liability, and we distinguished A.R. Moyer, Inc. on its facts.
Some of the competing interests involved in selecting the proper standard for accountants' liability to third parties are set forth in Annotation, Liability of Public Accountant to Third Parties, 46 A.L.R.3d 979, 984 (1972):
It is contended by those favoring such liability that accountants, due to their professional status and the respect they command, invite reliance on their work by the business community, and that investors and creditors do, in fact, rely upon their accuracy and integrity; on the other hand, it is pointed out that unlike members of other professions, accountants have no control over the identity or number of those who rely on their work, and that imposition of liability, in negligence, to third parties would place an enormous potential burden on the profession. Those in favor of expanding liability argue that the accounting profession no longer needs the protection of nonliability in this area, due to its wealth, and contend that the cost of insurance protection could be passed on to the client, stating that the innocent relier should not be damaged because of the error of the negligent accountant. In reply, it is observed that the cost of such insurance protection is prohibitive and, in many cases, that such coverage is not available at any price; furthermore, it is said, such higher costs would tend to lead to dominance of the profession by the large national accounting firms and to a curtailment of the availability of accountancy services to small businesses. Nor, it is contended, does the argument for extended liability take into consideration the ever more acute shortage of qualified public accountants in private practice. Those in favor of expanding liability argue that liability could easily be limited by the increased use of disclaimers and limited certifications, pointing to the success of the British experience in this area. Opponents, however, observe that the use of such devices is a commercial impossibility unless all accountants follow this practice, since it tends to dissatisfy the client, who will then turn to the use of other accountants not following this practice.
Upon consideration, we have decided to adopt the rationale of section 552, Restatement (Second) of Torts (1976), as setting forth the circumstances under which accountants may be held liable in negligence to persons who are not in contractual privity. The rule shall also apply to allegations of gross negligence, but the absence of privity shall continue to be no bar to charges of fraud. That this rule is broader than the one which limits liability to those *15 in privity or near privity is explained by comment (h) directed to subsection (2) which reads in part:
Under this Section, as in the case of the fraudulent misrepresentation (see § 531), it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated.
Yet, illustration 10 under section 552 clearly forecloses the extension of liability to a reasonably foreseeable test:
10. A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used in a wide variety of financial transactions by the corporation and that they may be relied upon by lenders, investors, shareholders, creditors, purchasers and the like, in numerous possible kinds of transactions. In fact B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.
Because of the heavy reliance upon audited financial statements in the contemporary financial world, we believe permitting recovery only from those in privity or near privity is unduly restrictive. On the other hand, we are persuaded by the wisdom of the rule which limits liability to those persons or classes of persons whom an accountant "knows" will rely on his opinion rather than those he "should have known" would do so because it takes into account the fact that an accountant controls neither his client's accounting records nor the distribution of his reports. As noted by the North Carolina Supreme Court when it adopted a similar position in Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 214-15, 367 S.E.2d 609, 617 (1988):
We conclude that the standard set forth in the Restatement (Second) of Torts § 552 (1977) represents the soundest approach to accountants' liability for negligent misrepresentation. It constitutes a middle ground between the restrictive Ultramares approach advocated by defendants and the expansive "reasonably foreseeable" approach advanced by plaintiffs. It recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely. On the other hand, as the commentary makes clear, it prevents extension of liability in situations where the accountant *16 "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." Restatement (Second) of Torts § 552, Comment h. As such it balances, more so than the other standards, the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.
There remains the need to apply this rule to the facts at hand. At the time Mitchell prepared the audits for C.M. Systems, it was unknown that they would be used to induce the reliance of First Florida Bank to approve a line of credit for C.M. Systems. Therefore, except for the unusual facts of this case, Mitchell could not be held liable to the bank for any negligence in preparing the audit. However, Mitchell actually negotiated the loan on behalf of his client. He personally delivered the financial statements to the bank with the knowledge that it would rely upon them in considering whether or not to make the loan. Under this unique set of facts, we believe that Mitchell vouched for the integrity of the audits and that his conduct in dealing with the bank sufficed to meet the requirements of the rule which we have adopted in this opinion.
Accordingly, we answer the certified question in the affirmative. To the extent that they may conflict with this opinion, we disapprove the opinions in Buchman, Investors Tax, and Gordon. We quash the decision of the district court of appeal and remand the case for further proceedings.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.