576 So.2d 744 (1991)
BAY GARDEN MANOR CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
JAMES D. MARKS ASSOCIATES, INC., and Hufsey Nicolaides Associates, Inc., Appellees.
No. 89-2576.
District Court of Appeal of Florida, Third District.
February 12, 1991.
Rehearing Denied April 16, 1991.
Hyman & Kaplan, and Michael L. Hyman and Edoardo Meloni, Miami, for appellant.
McDermott, Will & Emery, and James E. McDonald and Roderick V. Hannah, Miami, *745 for appellee Hufsey Nicolaides Associates, Inc.
Fredrica B. Elder and David L. Swimmer, Miami, for appellee James D. Marks.
Before BARKDULL, NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
The question presented is whether an engineering firm which supplies false information to an owner-client as to the physical condition of an apartment building  in contemplation of a conversion to condominiums  may be liable in tort to subsequent purchasers of the condominium units with whom there is no contractual relationship.
A summary judgment was entered on the legal conclusion that the plaintiff association could not maintain a tort action to recover economic losses absent an independent injury to persons or property. We reverse on the authority of First Florida Bank v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990), which was decided after the judgment on review was entered.
The material facts are not disputed. Bay Garden, the appellant, is a Condominium Association which represents its members, all of whom are unit owners. Marks and Hufsey Nicolaides, the appellees, are engineering firms which made inspections of the building and improvements prior to the conversion of the apartment building into a condominium. Section 718.504(15), Florida Statutes (1985), required the owner of an apartment building which is being converted to a condominium to provide to each buyer, as part of a prospectus or offering circular, an inspection report on the physical condition of the building and improvements. When the unit owners moved into their respective apartments they discovered that the condition of the building was not as represented by the two engineering firms. They sued the engineering firms for negligence.
The arguments of the parties focus on the economic loss rule, a doctrine which generally bars a tort action for purely economic losses. The purpose of the oft-criticized rule[1] is to shield a defendant from unlimited liability for all economic consequences of a negligent act, particularly in commercial settings, thus keeping the risk of liability reasonably calculable. Local Joint Exec. Bd. v. Stern, 98 Nev. 409, 410, 651 P.2d 637, 638 (1982). Under the rule, in the absence of privity of contract between two disputing parties, there is no "duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." Prosser & Keeton, Law of Torts § 92, at 657 (5th ed. 1986). While having undergone considerable erosion in recent years,[2] the economic loss rule has long been the law in Florida. Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987).
In First Florida Bank v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990), the supreme court answered a certified question on the liability of an accountant to a third party for damages resulting from the accountant's negligence in the absence of privity between the accountant and the third party. The court noted that there were essentially four lines of authority with respect to the issue including that expressed in Restatement (Second) of Torts § 552 (1976), which reads:
Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in *746 any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
The court first recognized the rationale of section 552 as a further erosion of the privity doctrine, then adopted it as setting forth the circumstances under which accountants may be held liable in negligence to persons who are not in contractual privity. First Florida Bank, 558 So.2d at 14.
Although First Florida Bank concerned the accounting profession, we do not believe the court intended to exclude other professionals who supply expert information for the purpose of guiding others in business transactions. The fifth district, in First State Sav. Bank v. Albright & Assocs., Inc., 561 So.2d 1326 (Fla. 5th DCA 1990), followed First Florida Bank and adopted section 552 as setting forth the circumstances under which an appraiser may be held liable to a third party for negligence. Factually, this case is within the reach of section 552. Engineering is a profession, Pensacola Exec. House Condo. Ass'n v. Baskerville-Donovan Eng'rs, Inc., 566 So.2d 850 (Fla. 1st DCA 1990), and it is undisputed that the engineers were hired to prepare reports of a structural inspection which would guide others in business decisions. The main questions to be decided on remand are whether the inspection reports were false, whether the unit owners were persons whom the engineers knew would rely on those opinions, and whether the units owners suffered pecuniary loss as a result of a justifiable reliance on the information  without regard for privity.
Reversed and remanded for further proceedings.
NOTES
[1] See e.g., Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n, 54 Ohio St.3d 1, 560 N.E.2d 206 (1990) (Brown, J., dissenting) (the doctrine of privity is bad tort law which originated accidentally in an ancient English opinion, citing Prosser, The Assault upon the Citadel (1960)).
[2] First Am. Title Ins. Co. v. First Title Serv. Co., 457 So.2d 467 (Fla. 1984) (refusing to recognize an abstractor's liability in tort "to any and all foreseeably injured parties" but permitting a contract action on a third-party beneficiary theory); A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) (permitting a general contractor to sue architect in tort action in the absence of privity where architect supervised the construction project).