660 So.2d 730 (1995)
FLORIDA BUILDING INSPECTION SERVICES, INC., Appellant,
v.
The ARNOLD CORPORATION, Printed Communications for Business, a/k/a The Arnold Corporation, Appellee.
No. 91-106.
District Court of Appeal of Florida, Third District.
July 26, 1995.
Rehearing Denied October 11, 1995.
*731 Douglas H. Stein, Miami, for appellant.
Harry A. Payton, P.A., Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, and GODERICH, JJ.

ON HEARING EN BANC
GERSTEN, Judge.
Appellant, Florida Building Inspection Services, Inc. (FBIS), appeals an adverse final judgment awarding damages to appellee, the Arnold Corporation (Arnold), for economic losses arising out of a tort claim. We reverse.
The issue in this appeal is whether a building inspection company hired by a lessee, owes a duty of care to a third party sublessee, not in privity, who has incurred economic loss. We recognize that there are arguments both for and against the erosion of the economic loss rule. Yet this court, yielding to a more conservative approach, adheres to the underlying philosophy of the rule, which is to protect parties' reasonable expectations and to ensure the ability to plan for the economic future.
In accordance with this philosophy, and our recent decision in Palau International Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA 1995), we decline to further erode the economic loss doctrine in the present case. Recognizing that there is no insurance great enough to protect one's business affairs against unlimited liability, we emphasize that the narrow exceptions to the privity requirement are to be strictly limited.
Turning to the facts, the third party sublessee in this case, Arnold, was interested in subleasing a warehouse from lessee Carson, Pirie, Scott & Co. (CPS). Prior to subleasing the building, Arnold insisted that CPS certify that the roof would be watertight and leak free. The roof had been installed in 1981, and was under a warranty from the roofing company until May of 1986.
In order to comply with its agreement to guarantee the roof, CPS hired FBIS to conduct a roof inspection. When the report was completed, CPS's broker requested a copy. FBIS sent a copy of the report to CPS's broker.
Without FBIS's knowledge, CPS's broker forwarded the report to Arnold to comply with its promise to provide assurance of the roof's condition. Arnold had never requested an inspection report from FBIS, was not even aware that FBIS was conducting an inspection prior to this time, and had no contact with FBIS.
Arnold and CPS then signed a fifteen month sublease agreement. The agreement identified the roof repairs outlined in FBIS's report as being the responsibility of CPS, and provided that Arnold had a five-year option to renew at the lease's expiration in September of 1985. FBIS prepared the report solely for the benefit of CPS.
In the months that followed, the roofing company returned on a number of occasions to repair multiple leaks in the roof. Despite Arnold's knowledge of the leaking problem, Arnold exercised its option to renew the sublease for another five-year period ending in September of 1990.
The problems with the roof persisted. After essentially replacing the entire roof, Arnold sued CPS, the roofing company, and FBIS. Prior to trial, Arnold settled with both CPS and the roofing company. After a non-jury trial against FBIS for negligent misrepresentation and negligent inspection, the trial court found FBIS negligent, and awarded Arnold $347,039.83 in damages for economic losses.
Florida's long standing general rule of law is that economic damages are not recoverable in a tort action where there is an absence of privity between a plaintiff and defendant. Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla. 1993); AFM Corp. v. *732 Southern Bell Tel. and Tel. Co., 515 So.2d 180 (Fla. 1987); Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987); Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp., 500 So.2d 688 (Fla. 3d DCA 1987). The purpose of the rule is to protect the parties' economic expectations and to keep the risk of liability reasonably calculable. Florida Power & Light Co. v. Westinghouse, 510 So.2d at 901; Bay Garden Manor Condominium Assoc., Inc. v. James D. Marks Assoc. Inc., 576 So.2d 744, 745 (Fla. 3d DCA 1991).
Under limited circumstances, Florida courts have recognized exceptions to the economic loss doctrine, and have allowed recovery from certain types of negligent providers of services who were not in privity with the plaintiff. First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990) (accountant); Angel, Cohen & Rogovin v. Oberon Inv., N.V., 512 So.2d 192 (Fla. 1987) (attorney); First Am. Title Ins. Co., Inc. v. First Title Serv. Co. of the Fla. Keys Inc., 457 So.2d 467 (Fla. 1984) (abstracter); Bay Garden Manor Condominium Ass'n, Inc. v. James D. Marks Assocs., Inc., 576 So.2d at 744 (engineer); First State Sav. Bank v. Albright & Assoc. of Ocala, Inc., 561 So.2d 1326 (Fla. 5th DCA) (appraiser), review denied, 576 So.2d 284 (Fla. 1990).
However, in these cases a duty was established to plaintiffs who were identifiable third party beneficiaries of the contract to provide services. In First Am. Title Ins. Co., Inc., 457 So.2d at 473, the court addressed the extent of an abstracter's liability, and held that privity would be relaxed only where the purchasers were "intended and known beneficiaries of the contract for the abstract service."
Subsequently, in Angel, Cohen, & Rogovin, 512 So.2d at 194, the court held that the extent of an attorney's duty to those not in privity was limited to intended third party beneficiaries of the attorney's services. Likewise, in Bay Garden Manor Condominium Ass'n, Inc., 576 So.2d at 746, this court used a similar analysis to find that condominium purchasers were the persons intended to benefit from an engineers report. Thus the engineers could be liable for negligence in the absence of privity.
As explained by the Second District in Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1353 (Fla. 2d DCA 1992), review denied, 626 So.2d 207 (Fla. 1993), these cases allow recovery of tort damages against a provider of information only when "an existing, specifically identifiable, intended beneficiary of a contract has not been given that status in a contract." See also McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elect., Inc., 582 So.2d 47 (Fla. 2d DCA) (Supreme Court cases mandate determination of parties' status as intended third party beneficiary), review dismissed, 587 So.2d 1327 (Fla. 1991). Cf. A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) (allowing contractors' recovery against architect because extensive supervisory responsibilities created duty to prevent economic loss).
In First Florida Bank v. Max Mitchell and Co., 558 So.2d 9 (Fla. 1990), the Florida Supreme Court further defined the limited types of third parties who may recover economic damages for negligence. The court stated that it was limitedly accepting the "rationale of Section 552, in the Restatement (Second) of Torts (1976), as setting forth the circumstances under which accountants may be held liable in negligence to persons who are not in contractual privity." First Florida Bank, 558 So.2d at 14. The court justified using section 552 to find third party liability of accountants because of the "heavy reliance upon audited financial statements in the contemporary financial world." First Florida Bank, 558 So.2d at 15.
However, as we noted in Palau, subsequent Florida courts have utilized section 552's rationale in very limited circumstances. See Palau International Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d at 417, and cases cited therein. Generally, liability for economic losses to third parties requires a balance between public policy and reallocation of economic risks throughout society. See Southland Constr., Inc. v. Richeson Corp., 642 So.2d 5, 8 (Fla. 5th DCA 1994); Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d at 1353.
*733 Applying the foregoing principles to the present case, we find no indication that the services provided by FBIS to CPS were intended to primarily and directly benefit Arnold. See Cigna Fire Underwriters Ins. Co., Inc. v. Leonard, 645 So.2d 28 (Fla. 4th DCA 1994); Davids v. A.R.A. Services, 572 So.2d 14 (Fla. 3d DCA 1990); Security Mutual Casualty Co. v. Pacura, 402 So.2d 1266 (Fla. 3d DCA 1981). The intended beneficiary of the report was CPS  not Arnold. CPS requested the inspection to identify problems that needed repair to sublease the building. FBIS did not prepare the report with the intent to benefit potential purchasers or sublessors.
Although it might be possible that a lessor would give an inspection report to a potential sublessee, mere foreseeability is not sufficient to impose liability for economic damages. See First Florida Bank, 558 So.2d at 15; Machata v. Seidman & Seidman a/k/a BDO, 644 So.2d 114 (Fla. 4th DCA 1994), review denied, 654 So.2d 919 (Fla. 1995). As noted in section 552(2)(a), the tort liability of a supplier of information is limited to persons "for whose benefit and guidance" the information was intended to be supplied. See also Restatement (Second) of Torts § 552 cmts. h & i (1979). Clearly Arnold was not an intended third party beneficiary of FBIS's report which was prepared for the benefit and guidance of CPS. See Applestein v. Deloitte Haskins & Sells, 637 So.2d 349, 350 (Fla. 3d DCA 1994); E.C. Goldman, Inc. v. A/R/C Associates, Inc., 543 So.2d 1268 (Fla. 5th DCA), review denied, 551 So.2d 461 (Fla. 1989); Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd., 479 So.2d 810 (Fla. 3d DCA 1985).
Moreover, Arnold was fully capable of assuring the condition of the roof by choosing and hiring its own inspectors rather than relying upon CPS's inspector. The fact that Arnold chose to accept the risk of relying upon the information supplied by CPS does not impose a duty upon FBIS, who did not know what CPS did with the report after it was delivered. See McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elect., Inc., 582 So.2d at 47. It is unseemingly unfair for every person who provides some services to worry about judicial scrutiny down the road.
In conclusion, the circumstances of this case do not justify creating an exception to the economic loss rule, and do not warrant a judicial expansion of traditional negligence law. Unlike the supervising architect in Moyer, FBIS did not have supervisory power of economic life and death over Arnold. Unlike the accountants in First Florida Bank, FBIS's inspection report prepared for the lessee/seller, was not the type of document heavily relied upon by third party sublessee/buyers in the financial world. And unlike the engineers in Bay Garden, Arnold was not the intended beneficiary of the report, which was prepared solely to enable CPS to repair roof problems and sublease the building.
Recognizing the importance of the economic realities of a free, unhampered market, we decline to change long-standing law, and thus decline to expose business to a new legal risk. Accordingly, because Arnold was neither in privity with FBIS, nor a third party intended to benefit by FBIS's services, we reverse the final judgment below.
Reversed.
SCHWARTZ, C.J., and HUBBART, BASKIN, JORGENSON, LEVY, and GODERICH, JJ., concur.
BARKDULL, Judge (specially concurring).
Without a showing in the record that FBIS was aware of the five-year option to extend the sublease I could only support a finding of liability for the term of the initial eighteen month sublease. Therefore I join in the reversal opinion authored by Judge Gersten.
NESBITT, Judge (concurring).
I concur in the result reached in the en banc judgment. I do so on a substantially different basis than articulated in the en banc opinion. I also agree with Judge Barkdull's concurrence, but do so on a slightly different basis.
The opinion of the en banc court is misleading and is simply going to confuse the *734 bar about the application of section 552 of the Restatement (Second) of Torts in Florida. Applying First Florida Bank v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990) to the general facts of this case, it is obvious that Arnold was the known and intended entity for which FBIS prepared the roof inspection. Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA 1995) (en banc), authored by Judge Gersten, makes it clear that section 552 applies to those persons in the business of supplying information for the guidance of others. It is simply undisputed in this case that making inspections and providing reports was FBIS' business. Consequently, under the Restatement as articulated in Max Mitchell, there was plainly threshold liability by FBIS to Arnold for damages that Arnold incurred as a result of the faulty roof inspection.
Initially, when Arnold entered into the sublease of the warehouse, it "justifiably relied" upon the negligent inspection report. This inspection report indicated evidence of water leakage. The report provided:
This inspection revealed evidence of leakage in the following locations: At breaks in wall flashing and numerous wall flashing laps are pulling apart. We recommend repairs to the above areas. Notation  Evidence of previous leakage and repair was found. Evidence of leakage appears to predate the present roof surface, other than above.
However, Arnold's initial "justifiable reliance" upon FBIS' inspection report is not dispositive of the case. After Arnold went into possession, the leakage problems continued and patching continued. The sublease expired some eight or nine months later. At that time, Arnold was on discoverable inquiry as to a deficiency either in the report or in the roof itself. Nonetheless, after repairs had been made to the roof per the inspection report, and repairs continued during the initial term of possession, Arnold proceeded to renew a five-year option upon the building. It was in the second year of the five-year option that the major problems occurred giving rise to the replacement of the roof.
Prudent business principles and common sense dictated that before the renewal Arnold get to the bottom of the matter; had it done so, it might have extricated itself from the lease by simply not renewing and moving its operations elsewhere. It seems to me, therefore, that the record amply demonstrates that there was no ultimate act of "justifiable reliance" as explicitly required in section 552 of the Restatement (Second) of Torts. Stated differently, Arnold could not continue to operate its business under the expectancy of holding FBIS as a "deep pocket" to cover its own imprudence. It may be fortuitous in this case for FBIS that the initial sublease was so short and that Arnold leased rather than purchased the building. Nonetheless, we must decide cases based upon the facts in the record.
For these specific reasons, I am persuaded to join in reversal of the judgment under review.
COPE, J., concurs.