663 So.2d 643 (1995)
George R. KINNEY, individually, and as Personal Representative of the Estate of Ruth R. Kinney, deceased, and as Trustee of the Testamentary Trust created by the Last Will and Testament of A. Girton Kinney, Appellant,
v.
A. Edwin SHINHOLSER; Phillip H. Logan; S. Kirby Moncrief; James A. Barks; Harry G. Reid, III; Shinholser, Logan, Moncrief & Barks; Shinholser, Barks & Reid; Moncrief & Reid, P.A.; Harold Hartsock; and Hartsock and Hartsock, Certified Public Accountants, Appellees.
No. 94-1526.
District Court of Appeal of Florida, Fifth District.
September 22, 1995.
Rehearings Denied November 29, 1995.
*644 Joseph H. Williams, of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, for appellant.
David B. King and John F. Tannian of King & Blackwell, P.A., Orlando, Christopher T. Hill, of Rumberger, Kirk & Caldwell, Orlando, and Shelley H. Leinicke and Ila J. Klion of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Ft. Lauderdale for appellees.
ORFINGER, M., Senior Judge.
The issues before this court are 1) whether the trial court properly dismissed appellant's second amended complaint with prejudice, and 2) whether a summary judgment in favor of certain of the appellees was properly entered. We affirm in part and reverse in part.
Appellant's second amended complaint seeks relief against attorney A. Edwin Shinholser and various partners and successor *645 law firms (Shinholser hereafter); against attorney S. Kirby Moncreif and various partners and successor law firms (Moncrief hereafter); and against accountant Harold Hartsock and his C.P.A. firm of Hartsock and Hartsock (Hartsock hereafter). Appellant is the only child and sole heir of his parents, A. Girton Kinney and Ruth R. Kinney, and is the personal representative of his mother's estate and trustee and ultimate beneficiary of a trust created by the will of his deceased father.
For the purpose of determining the sufficiency of a pleading, we accept as true all well pleaded allegations of the complaint. Bolton v. Smythe, 432 So.2d 129, 130 (Fla. 5th DCA), rev. denied, 440 So.2d 353 (Fla. 1983). Girton Kinney's will was prepared by Shinholser. Its essential provisions created a trust into which the residue of the estate was transferred, and of which appellant was designated the trustee. All net income of the trust was to be paid to Ruth Kinney, and appellant, as trustee, had the power to invade the principal of the trust for Ruth's benefit. At Ruth's death, all remaining trust assets were devised to appellant. At the heart of this controversy, as will be discussed later, was a provision in the will giving Ruth a general power of appointment over the assets of the trust.
When Girton Kinney died in 1986, Shinholser had retired from the active practice of law, so Ruth retained Moncrief to handle the probate of Girton's estate. During the course of the probate proceedings, upon becoming aware of the need to file a federal estate tax return, Moncrief suggested to Ruth that she retain a C.P.A. to prepare and file the return. She retained Hartsock and a copy of the will and other necessary documents were delivered to him. The complaint then alleges:
18. Because the will of A. Girton Kinney gave his surviving spouse ... a general power of appointment over the assets in his trust, the Estate of A. Girton Kinney was prevented from using A. Girton Kinney's unified credit against estate taxes ... to protect $500,000.00 of his assets from being subject to estate tax in the estate of Ruth R. Kinney at her death.
It was then alleged that Moncrief and Hartsock falsely caused the estate tax return to be filed as though the general power of appointment did not exist and that an IRS audit rejected the return and treated all assets of the trust as belonging to Ruth, with the result that Girton's estate lost the unified credit, and upon Ruth's death, her estate was obligated for additional taxes, interest and penalties amounting to $320,000, the sum of which appellant claims as damages from the appellees.

A. The cause of action against Shinholser.
As to Shinholser, the complaint alleges that the senior Kinneys advised him that they wanted to minimize the estate taxes, that the provision in the will "that all my just debts, funeral expenses, taxes and costs of administration of my estate be paid" indicated the intention to minimize estate taxes, and that Shinholser knew or should have known that the inclusion of the general power of appointment in the trust would frustrate that intent and cause an increase in such taxes.
In Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So.2d 1378 (Fla. 1993), the supreme court reaffirmed the principle that standing in legal malpractice actions involving the drafting of a will is limited to those who can show that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney. 612 So.2d at 1380. Extrinsic evidence is not admissible to determine the testamentary intent because, as pointed out in Espinosa, to allow such evidence would dramatically increase the risk of misinterpreting the testator's intent, as well as heightening the tendency to manufacture false evidence which could not be rebutted due to the unavailability of the testator. Therefore, the extrinsic evidence offered by appellant was properly rejected by the trial court in determining whether appellant stated a cause of action against Shinholser.
The sole evidence of the testator's intent is the will itself which contains, at best, only a direction that the just taxes be paid. This provision is a far cry from the clear expression of intent found in In re Estate of Reese, *646 622 So.2d 157 (Fla. 4th DCA 1993), where the testator's will contained a specific expression of intent to minimize estate and generational skipping tax liability. Neither does the will express the intent that the purpose of the trust was to minimize taxes. For these reasons, the complaint does not state a cause of action for malpractice in the drafting of the will, and therefore we affirm the dismissal of the second amended complaint as to Shinholser.

B. The cause of action against Moncrief and Hartsock.
In addition to dismissing the complaint as to Moncrief, the trial court granted a summary judgment in favor of Moncrief and Hartsock. Moncrief argues that absent the frustration of an express testamentary intent, the failure of an attorney to properly advise a client regarding how to dispose of property or make transfers is not actionable by a disappointed beneficiary such as appellant. In addition, Moncrief argues that there is no privity between them and appellant and therefore appellant has no standing to bring this suit.
However, Moncrief was not sued for malpractice in the drafting of the will; he and Hartsock were sued for negligence in failing to provide vital information to Ruth and appellant regarding the tax consequences of not disclaiming the power of appointment within nine months after Girton's death. Hartsock wrote to Ruth, advising her that the exercise of the power of appointment would produce serious tax consequences, although the evidence in the record tends to show that Hartsock knew, as soon as he read Girton's will, that it was the mere existence of the power of appointment in the will which would produce serious tax consequences unless waived by Ruth within the nine month period, and that there remained sufficient time for such a waiver to be effective.
There is also deposition testimony that Hartsock relayed that information to Moncrief because Moncrief was the attorney for the estate, and that Moncrief advised him to prepare the estate tax return as though the power of appointment did not exist. Neither Hartsock nor Moncrief advised Ruth that the tax problem would disappear if she disclaimed the power of appointment within the permitted time. She did not disclaim, the tax return was rejected, and it is alleged that Ruth's assets were diminished by $320,000 as previously mentioned.
Moncrief and Hartsock were hired by Ruth to probate the will and prepare the estate tax return, respectively. Appellant is not only the residuary beneficiary of the trust created by Girton's will, but is also the personal representative of Ruth's will and her sole beneficiary. It is clear that Ruth's assets (and thus appellant's inheritance) were diminished as a result of the increased tax liability. The supreme court held in Espinosa that a plaintiff in a legal malpractice action must either be in privity with the attorney or an intended third party beneficiary. Thus, under Espinosa, appellant has standing as the intended beneficiary of both Girton's and Ruth's wills. See also First Florida Bank, N.A. v. Max Mitchell & Company, 558 So.2d 9, 13 (Fla. 1990) (the liability of a lawyer, in the absence of privity, is limited to cases where legal services which were negligently performed were initiated to benefit a third party); Rushing v. Bosse, 652 So.2d 869 (Fla. 4th DCA 1995) (attorney is liable even in the absence of privity, to intended third party beneficiaries of attorney's actions when it is clear the client intended to benefit the third party); Brennan v. Ruffner, 640 So.2d 143 (Fla. 4th DCA 1994) (the rule of privity in legal malpractice actions is relaxed when the plaintiff is the intended third party beneficiary of the contract between the client and the attorney); Greenberg v. Mahoney, Adams & Criser, P.A., 614 So.2d 604 (Fla. 1st DCA), rev. denied, 624 So.2d 267 (Fla. 1993) (third party who is intended beneficiary has standing to sue for legal malpractice where it is the apparent intent of the client to benefit the third party).
In addition, appellant was a third party beneficiary of the relationship between Ruth and Hartsock. In First Florida Bank, N.A. v. Max Mitchell & Company, 558 So.2d 9 (Fla. 1990), the Florida Supreme Court held that an accountant's liability extends not only to those in privity, but also to those persons *647 who are not in contractual privity but who are the specific intended beneficiaries of the information provided by the accountant. See also Machata v. Seidman & Seidman, 644 So.2d 114 (Fla. 4th DCA 1994), rev. denied, 654 So.2d 919 (Fla. April 3, 1995) (liability of accountant for negligence is expanded beyond persons in privity to include those persons the accountant knows intend to rely on the accountant's opinion for a specific purpose). Although both First Florida Bank and Machata involved the question of an accountant's liability in the preparation of a financial statement, the standard enunciated is not limited to actions involving financial statements. Appellant, as the ultimate beneficiary of the estate and trust, was clearly a known intended beneficiary of the accountant's services in advising Ruth regarding the preparation of the estate tax return.
Other jurisdictions have imposed liability under similar circumstances. In Linck v. Barokas & Martin, 667 P.2d 171 (Alaska 1983), the testator left his estate to his wife, or if she predeceased him, to his children. Under Alaska law, the wife could have disclaimed her interest, allowing the estate to pass directly to the children, thereby avoiding payment of a second estate tax on the three million dollar estate. However, it was alleged that neither the probate attorney nor the accountant advised the widow of this right within the time allowed to disclaim. The trial court dismissed the complaint for failure to state a cause of action, but the Alaska Supreme Court held that the allegations sufficiently stated a cause of action for professional negligence; that an attorney-client and accountant-client relationship existed with the testator's family which required them to advise the wife and children of their estate planning options and the tax consequences, and they failed to do so, resulting in a substantially greater tax liability.
Appellant has standing to bring this action, and the second amended complaint should not have been dismissed. The record also reveals sufficient factual issues such as would preclude the entry of the summary judgment in favor of Moncrief and Hartsock. For the reasons expressed, the order dismissing the second amended complaint and entering summary judgment in favor of the Moncrief and Hartsock defendants is reversed, and the cause is remanded for further proceedings consistent herewith.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PETERSON, C.J. concurs specially with opinion.
HARRIS, J., concurs in part, dissents in part, with opinion.
PETERSON, Chief Judge, concurring.
I concur with Judge Orfinger's opinion and disagree with the dissent because the deposition of Harold Hartsock raises considerable issues of fact that should be resolved before judgment is rendered in this case. Resolution of those issues could eliminate the liability of both Hartsock and Kirby Moncrief or establish liability of one or both of them.
Hartsock's deposition reflects the following:
Q. When you read the will and you saw the general power of appointment and you recognized that as a tax problem, what did you do?
A. I called Kirby Moncrief.
Q. What did you tell him?
A. I told him he had a problem with the will, it needed to be discussed with Mr. Shinholser and revised if necessary. Or you know, appropriate legal action would be a better term, taken.
* * * * * *
Q. And you said something about doing something legally to solve the problem. Did you have any idea of what could legally be done to solve the problem?
A. Yes.
Q. What?
A. A disclaimer.
Q. And did you use that language with Kirby?
A. No.
Q. Why not?
A. Because I don't practice law.
Q. You figured he would probably be familiar with that?

*648 A. I would think so.
* * * * * *
Q. What did he tell you he was going to do?
A. I don't recall that he said anything specific, but later he called me back and apparently he talked to Ed Shinholser and told me it was not the intent to not have it all become part of the marital deduction.
Q. Wait a minute. It was the intent to not have it all become 
A. Yes.
Q. Part of the marital deduction?
A. Yes.
Q. Well, it did all become part of the marital deduction down the line, didn't it?
A. Yes.
Q. So did he explain to you what, what they meant  was it your understanding that he was telling you that it was the intent that this testamentary trust not be subject to federal income taxation?
* * * * * *
A. No, it was, his intent was that these assets were to be in Dr. Kinney's estate and they were not all to be subject to the marital deduction. As though the trust was valid. He didn't use the term as though the trust is valid, I don't recall, I won't say that. But that's what it means.
Q. Did that make any sense to you?
A. No.
Q. Did you tell him it didn't make any sense to you?
A. Yes.
Q. What did he say?
A. He said these things lapse.
Q. Meaning the power of appointment lapses?
A. Yes.
Q. Did you tell him yeah, they lapse, but there is a big tax 
A. No, I don't tell attorneys anything about their business. When they tell me something, that's the way it is.
From the above testimony, it appears Hartsock explained the problem to Moncrief and received an incomprehensible response. Moncrief either did not understand the problem, understood it and dealt with it in the manner he saw fit, or understood it and ignored the problem because he believed his responsibility was only to "probate the will," so to speak, before the probate court. The dissent assumes that a lawyer who represents a personal representative, in an estate administration that must file a federal estate tax return, can only be concerned with legal issues and can disclaim, or perhaps, ignore, any responsibility for estate tax issues. I am not sure that such is the case and instead would rely upon expert testimony to determine whether Moncrief's actions were appropriate, given the information that Hartsock supplied to him. There does not seem to be much doubt that the tax problem explained to Moncrief as well as to their client, was right on the money. The issue becomes whether Hartsock's information was processed correctly by both professionals. This is extremely important in view of the apparent lack of sophistication on the part of their client, Mrs. Kinney.
Hartsock did explain the problem to her but realized that she did not understand. Did Moncrief consult with Mrs. Kinney before responding to Hartsock that it was his understanding "that these assets were to be in Dr. Kinney's estate and they were not all to be subject to the marital deduction"? If, in fact, Moncrief did respond in that manner, certainly, he was required to consult with his client before issuing such an instruction on such an important issue, notwithstanding that his initial agreement with Mrs. Kinney was to probate the estate only.
What can a professional do when a client receives an explanation, but fails to respond in any way? In this case, Hartsock could not have drafted a waiver as a certified public accountant; that is a function exclusively within the domain of an attorney.
Still another issue exists as to whether it would have made any difference in the subsequent events if Hartsock had used the magical word "waiver" to the personal representative and the attorney for the personal representative, after explaining as best he could the respective tax burdens placed upon the *649 two estates by a will that was either cleverly, or negligently, drafted.
All these factual issues must be resolved by a trier of facts with the assistance of expert testimony and should not be resolved at a hearing on a motion for summary judgment. It is not at all clear at this stage of the litigation whether one, both, or any of the professionals, should be held responsible for a problem recognized and communicated to everyone by Hartsock.
HARRIS, Judge, concurring in part, dissenting in part.
I concur in the holding that the complaint was properly dismissed against Shinholser. I disagree, however, that in determining the liability of Moncrief and Hartsock that they should be considered together or that the trial court erred in granting summary judgment for both.
Moncrief undertook to probate the will of A. Girton Kinney. There is no complaint that he did not properly probate this estate. It was timely and properly accomplished. Moncrief's liability, the majority holds, is based on his failure to timely advise Mrs. Kinney, the personal representative, that she could avoid additional taxation in her estate if she timely renounced the power of appointment contained in her deceased husband's testamentary trust. But the record establishes that Moncrief, although he agreed to probate the estate, advised Mrs. Kinney that he did not handle the tax aspects of large estates and that she would need to retain a tax specialist to advise her on tax matters and to file the tax return for the estate. She agreed to do so and retained Hartsock for this purpose.
It appears to me that the issue is whether an attorney, by agreement, can limit his representation to matters within his experience and, by doing so, limit his potential liability. In my view, he should be permitted  and encouraged  to do so. If Moncrief had undertaken to probate this estate unmindful of potential tax consequences or uncaring as to such consequences, then he should be liable for any damages resulting from his handling of the estate. His negligence would be in not recognizing the potential problem or in failing to obtain competent assistance to handle the matter that he knew or should have known required specialized training.
But Moncrief recognized that an estate of this size needed a specialist in taxation to advise Mrs. Kinney and to prepare the tax return. He advised Mrs. Kinney of this before she retained him. She agreed to this condition of his representation and retained someone she considered competent. Moncrief, in my view, met his obligation to his client by putting her on notice and seeing to it that she employed a tax specialist. He should not be responsible for the negligence of Hartsock.
Hartsock admits that he never advised Moncrief that the power of appointment should be disclaimed in order to avoid taxes in Mrs. Kinney's estate. More importantly, he never advised Moncrief that Mrs. Kinney had in fact elected to disclaim such power. Regardless of the tax consequences, Moncrief could not properly have filed a disclaimer without specific direction from Mrs. Kinney. Because of the limitation of Moncrief's representation, these directions should have come from Mrs. Kinney after consultation with Hartsock. Since Mrs. Kinney, through her tax consultant, never indicated that the power of appointment should be disclaimed, Moncrief properly proceeded to probate the will as drafted.[1] The summary judgment in his favor should be affirmed.
*650 I would agree that Hartsock was negligent in not discussing with Mrs. Kinney her desires in relation to disclaiming the power of appointment. Hartsock was employed to give her tax advice. The problem I see is that appellant failed to present an issue as to the element of proximate cause of his damage at the hearing on the motion for summary judgment. There is nothing in the record to suggest that Mrs. Kinney would have disclaimed the power of appointment had she been advised that by doing so she could decrease the taxes to her estate.
The record establishes that appellant had done considerable research on how to avoid tax consequences of his father's estate even before his father prepared the will in question. He discussed his research and his concerns about saving taxes on his parents' estate with Shinholser before Shinholser prepared the will. He even admits that his preoccupation with saving taxes may have been misconstrued by his parents. By including the power of appointment in the trust, a decision that actually financially benefitted his mother during her lifetime, Mr. Kinney, Sr., seems to have rejected the tax saving objectives of his son and, instead, provided additional protection for his wife.
The power of appointment was a security blanket for Mrs. Kinney. After all, appellant, ever anxious to preserve that portion of the estate that would eventually come to him, had the sole discretion (but obligation) under the trust to invade the principal in order to meet his mother's needs. But by exercising his discretion in this manner, he would decrease the amount that would eventually come to him. Obviously, this would present a conflict. The mother, by retaining the power of appointment, effectively leveled the playing field. The record reflects that Mrs. Kinney confided in Moncrief that Shinholser had been their friend for many years and was aware of their distrust of their son and their fear that he would try to manipulate them out of their money.
Since appellant presented nothing in the record to raise the issue of whether Mrs. Kinney would have disclaimed the power of appointment even if she had been advised that to do so would increase the amount going to her son, I would affirm the court below.
NOTES
[1] Notice that the testimony set out in Judge Peterson's concurring opinion does not change this. Mrs. Kinney, after being advised by Moncrief to employ a tax specialist to assist her in matters involving tax issues relevant to the estate, employed Hartsock. By undertaking this representation, Hartsock became obliged to determine Mrs. Kinney's desire in regard to the waiver of the power of appointment and if she elected to proceed with such waiver, to communicate such decision to Moncrief and to advise Moncrief that he needed to file a waiver. After all, it was Hartsock, not Moncrief, that held himself out as an expert in IRS requirements for estate taxation. Hartsock admits he never determined from Mrs. Kinney whether she wished to waive her rights under the power of appointment and certainly never advised Moncrief that Mrs. Kinney wished to waive such rights. Merely advising Moncrief that the power of appointment created a tax problem that might need correcting was inadequate to create liability on the part of Moncrief crief. No correction was necessary (or proper) unless Mrs. Kinney elected to waive the protection accorded her by the power of appointment. To file such a waiver without direction from Mrs. Kinney would indeed have exposed Moncrief to liability.