536 So.2d 1058 (1988)
ESCAMBIA COUNTY, Appellant,
v.
Larry A. STICHWEH, As Personal Representative of the Estate of Ann Royer Stichweh, Appellee.
No. BS-400.
District Court of Appeal of Florida, First District.
October 28, 1988.
*1059 Richard A. Sherman, Fort Lauderdale and Robert P. Gaines of Beggs & Lane, Pensacola, for appellant.
H. Edward Moore, Jr. and Michael D. Hook of Moore, Hill & Westmoreland, P.A., Pensacola, for appellee.

ON MOTION FOR REHEARING
NIMMONS, Judge.
Appellant's motion for rehearing is denied. However, we withdraw our opinion filed September 15, 1988, and substitute the following opinion therefor.
Escambia County appeals from an adverse verdict and judgment in favor of the plaintiff in a wrongful death action brought by the Estate of Ann Royer Stichweh who died from injuries sustained in August 1983 in an automobile accident at the intersection of Saunders Avenue and Burgess Road in Escambia County.
Saunders Avenue, which runs north and south, is intersected by Burgess Road. Mrs. Stichweh was driving north on Saunders Avenue and was proceeding through the intersection without stopping when her vehicle was struck by another vehicle which was proceeding west on Burgess Road.
The complaint alleged that, although there was a stop sign located at the southeast corner of the intersection, the condition of the stop sign was such that Mrs. Stichweh failed to see it and proceeded into the intersection without first stopping. The complaint alleged that the County: (1) negligently maintained the stop sign; (2) negligently designed or planned the traffic control devices at the intersection; and (3) created a known dangerous condition at the intersection.
There was evidence from which the jury could find that the stop sign, which was located approximately ten feet from the western edge of Saunders Avenue, was bent such that it was not readily noticeable to vehicular traffic proceeding north on Saunders Avenue, and that such condition of the stop sign had existed for "at least 2-3 days." No other traffic control devices were present at the intersection or in the approaches to the intersection.
There was evidence of frequent accidents at the intersection. Further, the County's *1060 traffic engineer, Dennis Moxley, testified  consistent with a letter he had drafted in December, 1982  that several months earlier he had requested the County's Road Operations Department to paint "stop lines" and the word "STOP" on the pavement of Saunders Avenue just prior to the intersection and to move the stop sign closer to the edge of Saunders Avenue. There was evidence that such had not been done. The jury was also entitled to find from the evidence that the stop sign was not placed close enough to the western edge of Saunders Avenue.
The County contends that it had no responsibility for planning or maintaining traffic control devices at or about the intersection because Burgess Road is a state road under the jurisdiction of the Department of Transportation (DOT). The County also points to the fact that the stop sign was actually located inside the City of Pensacola city limits in that the city's boundary line ran along the southern right of way of Burgess Road westerly through the subject intersection turning northerly across Burgess Road along the western right of way of Saunders Avenue.[1] The County asserts that the stop sign was not in Escambia County's jurisdiction and that the traffic controls were the responsibility of DOT.
However, appellee never sought to establish that the County had any responsibility for Burgess Road or that the County could in any way alter the flow of traffic on Burgess Road since it was a state road. Rather, the issues tried were whether the County had responsibility for planning traffic control devices on the approaches of Saunders Avenue at Burgess Road and for maintaining Saunders Avenue at the intersection. The record is clear that Escambia County admitted that it was responsible for the maintenance of the stop sign on the southeast corner of the intersection. Moreover, Moxley, the County's traffic engineer, admitted that the County normally takes responsibility for traffic control devices[2] at an intersection like this on county road approaches to state roads.[3] Moxley also acknowledged that the County had the responsibility for the placement of other traffic control devices on county road approaches to intersections with state roads, including such devices as those mentioned previously herein which Moxley had actually requested.
In a special verdict form, the jury was asked to make a finding as to each of three theories of negligence. One was whether the County was negligent in the "maintenance of the traffic control devices" at the intersection. A second was whether the County was negligent "in connection with the planning of the traffic control devices." The third question was whether the County "creat[ed] a known dangerous condition for which it failed to warn the public." The jury answered all three questions in the affirmative. A fourth question asked whether Mrs. Stichweh was herself negligent to which the jury also responded affirmatively. The jury's allocation of negligence was 92% for Escambia County and 8% for Mrs. Stichweh. Finally, the verdict reflected the total amount of damages found by the jury as to Mrs. Stichweh's estate and as to her husband and two children.
Appellant contends that the trial court erred in denying its motion for directed verdict and motion for judgment n.o.v. on the grounds that there was not competent substantial evidence to sustain a finding of liability under any of the three theories.
With respect to the negligent maintenance theory, appellant contends that there was not competent substantial evidence to support liability. Although the County concedes that it had the duty of maintenance of the stop sign, it contends that there was no evidence of actual or constructive notice to the County of the *1061 damaged (bent) condition of the stop sign. We disagree.
There was testimony that the sign had been bent in such a fashion that a person approaching the intersection on Saunders Avenue could be led to believe  if indeed he saw it  that it was a stop sign for Burgess Road. There was also testimony from people who had observed the sign that this particular defect in the sign had existed for at least two to three days.
One witness testified that the sign had been down or damaged on numerous other occasions and that the County had been notified on those occasions. Another witness testified that he narrowly avoided an accident at this intersection the night before the subject accident. He failed to heed the stop sign because its bent condition led him to believe that he had the right of way.
In order for a party to be charged with constructive knowledge of a dangerous condition, such condition must have existed for a sufficient length of time so that it should have been discovered by such party. Montgomery v. Florida Jitney Jungle Stores, Inc., 281 So.2d 302 (Fla. 1973); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075 (Fla. 3rd DCA 1983). In the instant case, there was sufficient evidence of constructive knowledge of the sign's condition.
With respect to appellee's allegation that the County negligently designed or planned the traffic control devices at the intersection, we note that this theory of liability was added via an amended complaint immediately after the Supreme Court's decision in Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986). This decision held that, even though a governmental entity might otherwise be entitled to sovereign immunity for planning level or discretionary decisions, such immunity is waived up to the policy limits of tort liability coverage purchased by the entity pursuant to Section 286.28(2), Florida Statutes.[4]
Whether to install the traffic control devices described in the above referred December, 1982 Moxley letter was a planning level determination for which sovereign immunity was waived up to the limits of the County's tort liability policy. There was no error in the trial court's submissions to the jury on the issue of liability under this theory.
Insofar as the third theory of liability  creation of a known dangerous condition  we agree with appellant that the evidence does not support such theory as that theory has been announced in Neilson[5] and Collom[6] and more recently explicated in the Stark[7] decision. Were this the only theory upon which the appellee established a duty to Mrs. Stichweh, we would, of course, be compelled to reverse. Appellant contends that the trial court's erroneously instructing the jury as to such duty along with the two other duty instructions regarding the two other theories of liability served to unduly emphasize the County's *1062 duty. We disagree and find no reversible error.
We have examined the remaining points raised by appellant and find them to be without merit.
AFFIRMED.
SMITH, C.J., and BOOTH, J., concur.
NOTES
[1] Actually, the exact location of the city/county boundary line is not entirely clear from the record.
[2] Except for signal lights which would impede the flow of traffic along intersecting state roads.
[3] Moxley did say that before he would place a device "down the road" (i.e. south of the intersection on Saunders Avenue), he would consult with the City.
[4] Appellant asserts that the Legislature has overruled Avallone by its passage of Chapter 87-134, Section 3, Laws of Florida, which amends Section 768.28(5), Florida Statutes (Supp. 1986) and states in part:

[T]he state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above.
We find it unnecessary to consider this contention in light of Section 5 of Chapter 87-134, which states:
[T]his act shall take effect upon becoming a law and shall apply to all causes of action then pending or thereafter filed, but shall not apply to any cause of action to [sic] which a final judgment has been rendered or in which the jury has returned a verdict unless such judgment or verdict has been or shall be reversed.
The amendment is, by its own terms, inapplicable to this case in which final judgment was rendered well in advance of the June 30, 1987 effective date of Chapter 87-134.
[5] Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982).
[6] City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982).
[7] Bailey Drainage District v. Stark, 526 So.2d 678 (Fla. 1988).