582 So.2d 47 (1991)
McELVY, JENNEWEIN, STEFANY, HOWARD, INC., Appellant,
v.
ARLINGTON ELECTRIC, INC., J.F. Hoff Electric Co., a Joint Venture, Appellees.
No. 90-02552.
District Court of Appeal of Florida, Second District.
June 12, 1991.
Rehearing Denied July 11, 1991.
Anthony A.B. Dogali, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, for appellant.
James S. Telepman, Murphy, Reid, Pilotte & Ross, P.A., Palm Beach, for appellees.
PER CURIAM.
McElvy, Jennewein, Stefany, Howard, Inc., an architectural design firm, appeals a final judgment finding it liable in tort for negligently interpreting provisions of a construction contract between the City of Tampa and its general contractor. We reverse.
The contract between the City and the architects concerned principally the design and specifications for construction of the Tampa Bay Performing Arts Center. It also required the architects to use good faith in advising the City on the interpretation and application of the plans and specifications *48 during construction. The architects had no duty to supervise the construction or the general contractor with whom the City subsequently contracted to carry out the work.
The architects included in the design sophisticated state-of-the-art acoustical and theatrical systems. The specifications contained three approved suppliers of performance lighting systems  Strand Century, Kliegl Brothers and Dilor Industries Ltd. When the architects had completed the design and specifications, the City solicited bids. Great Southwest Corporation was the winning bidder as the general contractor. Great Southwest's bid had included the appellees as its chosen electrical subcontractors. The appellees own subcontracting bid, which is considered part of the larger general contractor's bid, listed Dilor as their performance lighting supplier. The bid proposals became part of the construction contract and construction began in 1984.
The appellees soon began experiencing problems with Dilor's performance. There were rumors to this effect which reached the City's representatives as well as the architects' representatives on the construction site. These problems became a subject of discussion among the City's on-site project manager, the architects' representative, and the general contractor at certain progress meetings. In August, 1984, the appellees finally requested in writing to the general contractor that they be allowed to switch to another approved supplier. The City denied this request in a letter dated December 26, 1984, to the general contractor. The City's denial was based, in part, on the architects' advice. The City determined that the appellees had not provided sufficient substantiation to grant the request. In February 1985, Dilor withdrew from the project. The appellees then renewed their request to use another approved supplier and, since Dilor was unwilling to perform, this request was granted.
The appellees filed a suit against the architects contending that if the architects had correctly interpreted the contract between the City and the general contractor, by applying the correct standard to their request to switch suppliers, the appellees would not have been economically damaged. The damages the appellees claimed they suffered resulted from the delays caused by the architects using the stricter "substitution" standard for changing suppliers under the contracts instead of the easier to meet "contractor option" standard. The architects consistently argued throughout pretrial and trial phases that the appellees could not state a cause of action in tort against them for recovery of their purely economic losses since there was no duty owed to the appellees under the architects' contract with the City and there was no claim for personal injury or property damage. The jury ultimately returned a verdict finding that the architects had negligently breached a duty owed the appellees under the City-architect contract.
We agree with the architects that A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) does not control this case because of material factual differences. Moyer held that whenever an architect's contract vested in him supervisory responsibilities, the architect also carried a "concurrent duty not to injure foreseeable parties not beneficiaries of the contract." AFM Corp. v. Southern Bell Telephone and Telegraph Company, 515 So.2d 180, 181 (Fla. 1987). In Moyer, the supreme court was answering certified questions from the United States Court of Appeals, Fifth Circuit, concerning whether a general contractor could state a cause of action in negligence for purely economic losses when the general contractor was not in contractual privity with the supervising architect. The supreme court concluded the general contractor could sue in tort in such circumstances. The supreme court expressly determined that the general contractor was a party who could foreseeably be injured economically by the negligent performance of a contractual duty of a supervising architect; indeed, the supreme court recognized that a supervising architect had the power of economic life and death over the general contractor. Moyer, 285 So.2d at 401 citing United States v. Rogers & Rogers, 161 F. Supp. 132, 136 (S.D.Calif. 1958). Because *49 the supreme court did not have the benefit of the architect-owner contract before it, it could not precisely determine whether, under the terms of that contract, the general contractor was also an intended third party beneficiary. The court did, however, suggest that, generally, a contractor is an incidental beneficiary of such contract, even where supervisory duties are vested in the architect, "absent clear intent manifested in the owner-architect contract to the contrary." Moyer, 285 So.2d at 403. Moreover, the court stated that any theory that a supervising architect is the owner's agent "militates against a third party beneficiary approach." Id.
Cases attempting to apply Moyer to a given set of facts underscore the necessity that supervisory duties exist in order to allow a case to be tried under a tort theory where the plaintiff lacks privity or status as an intended third-party beneficiary. First American Title Insurance Co. v. First Title Service Company of the Florida Keys, 457 So.2d 467 (Fla. 1984) (Moyer inapplicable because court found status as intended third-party beneficiary; abstractors do not owe duty to all foreseeable users); AFM Corp. (Moyer distinguished because parties in privity); First Florida Bank, N.A. v. Max Mitchell & Company, 558 So.2d 9 (Fla. 1990) (Moyer's analogy to products liability law found unpersuasive in accountant context); E.C. Goldman, Inc. v. A/R/C Associates, 543 So.2d 1268 (Fla. 5th DCA) pet. rev. denied 551 So.2d 461 (Fla. 1989) (Moyer unpersuasive in analysis of contract principles because of supervisory element). It appears to us that in its contract with the City under which the architects were working, there is clearly no responsibility vested in the architects to supervise the construction or any of the contractors. Furthermore, since the appellees here are subcontractors, one step further removed from the architect than was the general contractor in Moyer, we have difficulty in extending any duty out to the subcontractors because of such attenuated circumstances absent exceptions which could exist such as supervision to insure compliance with safety regulations. See Moyer. Therefore, we find Moyer inapplicable here.
Although we conclude that Moyer does not support an affirmance because the supervisory element is lacking, we consider whether there is a remaining theory under which the judgment can be affirmed. See Escambia County v. Stichweh, 536 So.2d 1058 (Fla. 1st DCA) pet. rev. denied, 541 So.2d 1172 (Fla. 1988). Moyer's discussion of the foreseeability of the injury to the general contractor, and the recent supreme court cases of First American Title and Max Mitchell, mandate that we determine if the appellees are intended third party beneficiaries of the City-architect contract or a party whom the architects could have foreseen would suffer economic losses from the negligent breach of that contract.
In light of the provisions of this contract to advise and consult, neither Moyer nor First American Title support a view that intended third party beneficiary status exists here. On the foreseeability of injury issue we look to Max Mitchell, where the supreme court adopted the Restatement (Second) of Torts, section 552 (1976), approach to an accountant's duty to provide information in a non-negligent manner. The supreme court was persuaded to adopt this approach because it saw the wisdom in limiting liability to those persons or classes of persons whom an accountant knows will rely on his opinion rather than on those he "should have known" would rely on it. The supreme court considered this preferable because the accountant does not control his client's accounting records nor the distribution of his financial reports and opinions. Max Mitchell, 558 So.2d at 15.
Here, the architects contracted with the City of Tampa to draw plans and specifications and to render thereafter good faith advice to their client on a continuing basis in interpreting those plans and specifications in a consulting capacity. The architects did not agree to render the ultimate decision on the interpretation of the contracts. They knew that the client, the City, would use their advice in whatever manner it saw fit in reaching a final decision. They also should have known that the contractors, *50 both general and subs, would be impacted by the City's final decision although any reliance by a contractor would be on the City's final decision and not on the architect's advice. Like accountants, this is the point where an architect's reasonable liability should end. As the supreme court said of the accountant's role:
[The Restatement (Second) standard] balances, more so than the other standards, the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.

Max Mitchell, 558 So.2d at 16 (emphasis added). Under their contract with the City, the architects undertook to render good faith advice and interpretation; they did not undertake to render the ultimate decision even though the City's ultimate decision might be similar. The trial court thus erred in allowing the case to go to the jury because by the terms of the City-architect contract the duty imposed on the architects could not have been extended to the appellees under the law as we have analyzed it above.
This rationale and result accord with Goldman wherein the fifth district affirmed a judgment on the pleadings in favor of a roofing consultant who had been sued by the roofing subcontractor for negligently evaluating the roof job and advising the owner to reject it. The court found that there was insufficient "nexus" between the alleged cause of the injury, i.e., the advice of the consultant, and the plaintiff's economic loss. The roof consultant had nothing to do with the design or construction of the roof and had only undertaken to render an opinion to the owner on how well the roof had been built. The architects in the case before us did undertake the design of the plans and specifications but those plans and specifications are not the basis upon which the appellees here sought recovery from the architects. The appellees sued the architects solely on the theory that the architects negligently rendered advice to the City that the appellees had not met the substitution of supplier standard under the contract. We find, like Goldman, that such alleged cause of injury provided an insufficient nexus here, too.
The final judgment in favor of the appellees is reversed and the cause is remanded to the trial court with instructions to enter a judgment in favor of the architects.
Reversed and remanded.
SCHOONOVER, C.J., and SCHEB and THREADGILL, JJ., concur.