642 So.2d 5 (1994)
SOUTHLAND CONSTRUCTION, INC., Appellant,
v.
The RICHESON CORP., a Florida corporation and Thomas E. Richeson, Appellees.
No. 93-2636.
District Court of Appeal of Florida, Fifth District.
July 22, 1994.
*6 Gus R. Benitez of Benitez & Butcher, P.A., Orlando, for appellant.
J. Timothy Schulte of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellee.
W. SHARP, Judge.
Southland Construction, Inc. appeals from a final summary judgment dismissing Thomas E. Richeson from a lawsuit Southland filed against him and The Richeson Corporation. Southland had filed suit against Richeson, individually, and the corporation, for breach of contract in their alleged faulty design of a retaining wall for Harbour Key Apartments (Count I), and for negligence in failing to design the wall in a manner consistent with professional engineering standards (Count II). The trial court earlier granted summary judgment in favor of both defendants against Southland on Count II because of "the economic impact rule." We affirm the trial court's summary judgment in Richeson's favor regarding Count I, the contract count, but reverse the summary judgment in his favor on Count II, the negligence count.
Our jurisdiction in this matter is somewhat complicated and deserves an explanation. Since The Richeson Corporation remains a viable defendant below on the contract count, we do not have jurisdiction to deal with whether or not the negligence count was properly dismissed as to it. See Mendez v. West Flagler Family Ass'n., Inc., 303 So.2d 1 (Fla. 1974).
However, we do have jurisdiction to consider the propriety of the lower court's summary judgment as to both counts in so far as Richeson, individually, is concerned since he *7 is being dropped from the lawsuit as a party. Florida Rule of Appellate Procedure 9.110(k) provides:
Except as otherwise provided herein, partial final judgments are reviewable either on appeal from the partial final judgment or on appeal from the final judgment in the entire case. If a partial final judgment totally disposes of an entire case as to any party, it must be appealed within 30 days of rendition.
Southland must now appeal the propriety of dismissing both counts as to Richeson, or lose its appeal rights as to Richeson. Accordingly, in this appeal we only deal with Richeson, individually, as the appellee.
With regard to the summary judgment disallowing Southland any recovery against Richeson, individually, on the contract count, we think the record fails to establish any material issue of fact concerning whether an oral contract existed with Richeson, individually. To the contrary, all the documentary evidence adduced shows that the contract was with the corporation, and that Richeson was acting as the corporation's president or agent. One witness who was deposed in this case testified the oral contract was with both Richeson, individually and the corporation. However, he admitted he had no personal knowledge of Southland's contractual arrangements with Richeson and his corporation. This deposition testimony was therefore insufficient to create a material question of fact. See Anderson v. SeaEscape Ltd., Inc., 541 So.2d 1339 (Fla. 2d DCA 1989); Thompson v. Citizens National Bank of Leesburg, Fla., 433 So.2d 32 (Fla. 5th DCA 1983). See also, Marco Polo Hotel v. Popielarczyk, 622 So.2d 104 (Fla. 3d DCA 1993).
Whether the trial court properly entered summary judgment for Richeson, individually, on the negligence count based on the "economic impact rule" (economic loss rule) is a far more difficult question. The record establishes that Southland entered into an oral contract with The Richeson Corporation to design and engineer a retaining wall for Harbour Key Apartments. Thomas E. Richeson (the appellee) is the president of the corporation and a professional licensed engineer. The corporation is a Florida professional service corporation. Both held themselves out as experts in the field of engineering retaining walls.
Southland was the general contractor for the apartment project. It hired the corporation to design the retaining wall. Richeson, individually, did the engineering drawings and signed them for the corporation. Southland alleged the wall was not designed consistent with appropriate professional engineering standards. It cracked and bulged and would have collapsed had it not been immediately reinforced and repaired. Southland incurred $188,000.00 of additional costs and expenses to reinforce and repair the wall. It also was required to repair a pool deck and wall for the apartment owner, which had been damaged by the failed retaining wall built with Richeson's defective design.
The "economic loss" rule is a court-created doctrine which prohibits the extension of tort recovery for cases in which a product has damaged only itself and there is no personal injury or damage to "other property," and the losses or damage are economic in nature. The debate joined in by Prosser and other tort experts was whether or not to expand a manufacturer's tort liability to encompass economic losses.[1] They argued that the only remedy in such cases should be for breach of contract or breach of warranty.[2] The Florida Supreme Court adopted this doctrine for this state in Casa Clara Condominium Ass'n., Inc. v. Charley Toppino and *8 Sons, Inc., 620 So.2d 1244 (Fla. 1993) and AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla. 1987).
In Casa Clara, the homeowners sued a concrete supplier under a negligence theory, for having provided defective concrete for their condominium project which caused the steel supports to rust and crack, thereby damaging the buildings. The court held that no damage to "other property" was involved and since nothing more than "economic losses" was involved, the plaintiff had no tort claim against the concrete supplier. It refused to "extend" tort recovery in this context, and limited the plaintiff to recovery under contract or warranties.
In AFM, the court ruled that a purchaser of services was also barred from suing in tort for damages caused by an incorrect listing in the yellow pages. Because there was no independent basis for a tort suit, the court said there was no possible tort recovery for economic losses caused by the incorrect listing in this state.
However, both AFM and Casa Clara left still standing as "good law" in this state, although limited to its facts, A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973). As the court explained in AFM:
In that case, [A.R. Moyer, Inc.] we held a general contractor had a cause of action for the alleged negligent supervisory performance by an architect. In so holding, we expressly determined that the contractor was not a party to the contract with the architect, nor was he a third party beneficiary of the contract. We based our decision on the fact that the supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties not beneficiaries of the contract. We declined in that case to find a basis for the negligence claim under the contract itself, absent a clear intent manifested in the contract. Since there was no contract under which the general contractor could recover his loss, we concluded he did have a cause of action in tort.
AFM, 515 So.2d at 181.
In this case, there was no contract relationship between the allegedly negligent engineer and the contractor who procured and used the engineer's plans on a building project. However, it was abundantly clear that Southland, as user of the plans, would be injured if the design were professionally below acceptable standards, and caused damages. Richeson, as an individual professional, owed Southland a duty to perform his professional duties in a professional, competent manner. Moyer is thus authority for allowing a tort suit against Richeson, individually, for professional malpractice.
The professional malpractice of persons not in direct privity with a person injured by the professional's services is the gist of numerous lawsuits in this state as well as elsewhere.[3] Allowing tort recovery in this context is therefore not an extension of established tort liability. Rather, to deny tort liability on the basis of the "economic loss" doctrine would reduce already-established tort liability. See 3 Am.Jur.2d Agency § 309 (1986); Restatement (Second) Agency § 343 (1958); 2 Fla.Torts §§ 60-5, 60.11(2); 60-30 (1994). But see Matthew S. Steffy, 82 Ky. L.J. 659, Negligence, Contract and Architects' Liability for Economic Loss (1993-94). In adopting the "economic loss" rule for its state, the court in Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del.Supr. 1992), expressly said:
This decision is not intended to extend to the question of whether the economic loss doctrine bars recovery of economic loss caused by professional malpractice in tort.
608 A.2d at 1201, n. 5.
The tort liability of professionals appears to vary according to the type of professional involved,[4] and the court's public policy decisions as to who should be "foreseeable *9 plaintiffs."[5] As regards the tort liability of engineers, one who negligently performs a professional engineering service, knowing that another person will be injured if it is negligently performed, is liable in tort, even though there is no contract between the parties. See Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979); Donnelly Construction Co.; A.R., Moyer, Inc.; Prosser, Law of Torts (4th ed) at 617 (1983). Annotation, Tort Liability of Project Architect for Economic Damages Suffered by Contractor" 65 A.L.R.3d 249, 252 (1975).
The circle of foreseeability of injury to Southland for Richeson's professional services is closer and tighter than in A.R. Moyer, since in that case the contract was between the owner and the professional  not the contractor. Here, the contract was with the professional service corporation and the contractor. Sections 471.023(3)[6] and 621.07[7] fully contemplate tort liability for the individuals who perform the service for professional service corporations in this context.
Further, this record presents a material question of fact as to whether damages to "other property" was involved in this case, and not just "economic loss," even if the economic loss rule were applicable. What constitutes damage to "other property" is sometimes a puzzling circumstance to determine in resolution of economic loss cases.[8] However, here, the record supports the view that other structures not involved in the building project were damaged by the failure of the retaining wall; i.e., the adjoining pool deck and a different wall.
Accordingly, we affirm summary judgment as to the contract count (Count I) but reverse as to the negligence count (Count II), and remand for further proceedings.
*10 AFFIRMED in part; REVERSED in part; REMANDED.
COBB and THOMPSON, JJ., concur.
NOTES
[1] Note, Economic Loss In Products Liability, Jurisprudence 66 Colum.L.Rev. 917 (1966). See also William K. Jones, Product Defects Causing Commercial Loss: The Ascendancy of the Contract Over "Tort", 44 U. Miami L.Rev. 731 (1990); Robert H. Buesing and John E. Johnson, Economic Loss Rule: A Trial Lawyer's Guide to Protecting Contract Rights," Fla.B.J. April 1992 at 38.
[2] See Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (Cal. 1965) (case of the "galloping" truck); Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del.Supr. 1992) (defective building design "kit"); East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (defective rings and valves in turbine engines).
[3] See, e.g., First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990); Mayor and City Council of City of Columbus, Miss. v. Clark-Dietz and Associates-Engineers, Inc., 550 F. Supp. 610 (N.D.Miss. 1982); Kerry's Bromeliad Nursery v. Reiling, 561 So.2d 1305 (Fla. 3d DCA 1990); Scott v. Sun Bank of Volusia County, 408 So.2d 591 (Fla. 5th DCA 1981).
[4] Donnelly Construction Co. v. Oberg/Hunt/Gilleland, 139 Ariz. 184, 677 P.2d 1292 (Ariz. 1984).
[5] See, e.g., Angel, Cohen and Rogovin v. Oberon Inv., N.V., 512 So.2d 192 (Fla. 1987); First American Title Insurance Co., Inc. v. First Title Service Co. of the Florida Keys, Inc., 457 So.2d 467 (Fla. 1984).
[6] Section 471.023(3) states:

The fact that a registered engineer practices through a corporation or partnership shall not relieve the registrant from personal liability for negligence, misconduct, or wrongful acts committed by him. Partnerships and all partners shall be jointly and severally liable for the negligence, misconduct, or wrongful acts committed by their agents, employees, or partners while acting in a professional capacity. Any officer, agent, or employee of a corporation shall be personally liable and accountable only for negligent acts, wrongful acts, or misconduct committed by him or committed by any person under his direct supervision and control, while rendering professional services on behalf of the corporation. The personal liability of a shareholder of a corporation, in his capacity as shareholder, shall be no greater than that of a shareholder-employee of a corporation incorporated under chapter 607. The corporation shall be liable up to the full value of its property for any negligent acts, wrongful acts, or misconduct committed by any of its officers, agents, or employees while they are engaged on behalf of the corporation in the rendering of professional services. (emphasis supplied)
[7] Section 621.07, Florida Statutes (1993) provides:

Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict, or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; provided, however, that any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control, while rendering professional service on behalf of the corporation or limited liability company to the person for whom such professional services were being rendered; and provided further that the personal liability of shareholders of a corporation, or members of a limited liability company, organized under this act, in their capacity as shareholders or members of such corporation or limited liability company, shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607 or a member-employee of a limited liability company organized under chapter 608. The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services. (emphasis supplied)
[8] Note, Economic Loss In Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966).