RECREATIONAL DESIGN & CONSTRUCTION, INC., a Florida Corporation, Plaintiff,

v.

WISS, JANNEY, ELSTNER ASSOCIATES, INC., et al., Defendants.

Case No. 10–cv–21549.

United States District Court, S.D. Florida.

Jan. 24, 2011.

Thomas R. Shahady, Kopelwitz Ostrow Ferguson-Weiselberg Keechl, Fort Lauderdale, FL, for Plaintiff.

Monica Theresa Cronin, David Palmer Harnett, Hinshaw & Culbertson LLP, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ALAN S. GOLD, District Judge.

THIS CAUSE came before the court upon Defendant Wiss, Janney, Elstner Associates' and Defendant John F. Duntemann's ("Defendants") Motion to Dismiss (the "Motion"). [ECF No. 6]. Plaintiff Recreational Design & Construction, Inc. ("Plaintiff") filed a Response in opposition to the Motion, [ECF No. 12], and Defendants filed a Reply. [ECF Nos. 17, 18].[1] I held a telephonic status conference on January 19, 2011, to discuss Plaintiff's intention to file an Amended Complaint and the implications that such an Amended Complaint may have on the Court's subject matter jurisdiction.[2] For the reasons set forth below, I find oral argument unnecessary and grant Defendants' Motion to Dismiss the Complaint without prejudice.

### I. Background

This case concerns a construction project called "Victory Pool Renovations" located in the City of North Miami Beach (the "City"). The relevant facts, taken as true for purposes of this Motion to Dismiss, are as follows.

Plaintiff is a Florida corporation in the construction business. [ECF No. 1–1 ¶¶ 2, 8]. Defendants are two Illinois-based engineering corporations and two individual professional engineers who work for those corporations. [Id. ¶¶ 3–6].[3] In February 2006, Plaintiff entered into a written agreement with the City in which Plaintiff was to perform all design and construction services for the "Victory Pool Renovations" project. [Id. ¶ 8].[4] The City noted certain imperfections in the project after its completion and hired the Defendants to perform independent engineering evaluations of the project. [Id. ¶ 10]. Defendants concluded that the project was structurally unsafe and provided reports to the City advising it that a defective water slide, which was part of the project, needed to be immediately replaced. [Id. ¶ 11]. Defendants were aware that Plaintiff was the contractor on the project. [Id. ¶ 12].

Relying on Defendants' engineering reports, the City directed Plaintiff to immediately replace the water slide. [Id. ¶ 13]. Plaintiff provided reports from other independent engineers, which refuted the conclusions in Defendants' reports, but the City still insisted that Plaintiff build and install a new water slide because it had publicly disclosed the Defendants' reports. [Id. ¶¶ 14–15]. Plaintiff rebuilt and rein-

---

1. After moving for an extension of time to file their Reply, Defendants submitted the Reply on the last day permitted by the Court's extension. [ECF Nos. 16, 17]. Defendants subsequently filed an Amended Reply three days later. [ECF No. 18]. Plaintiff has not objected to the Defendants' submission of its Amended Reply. Therefore, I will consider and refer to the arguments from the Amended Reply in this order.

2. As discussed during the status conference, this order should not preclude Plaintiff from filing an Amended Complaint but rather it should provide guidance for the Parties as they proceed with their claims and defenses.

3. Plaintiff has sued four Defendants: (1) Wiss, Janney, Elstner Associates, Inc. ("WJE"); (2) John F. Duntemann ("Duntemann"); (3) B.D. Agarwal & Associates, Ltd. ("BDA"); and (4) Bhagwan D. Agarwal ("Agarwal"). Defendants BDA and Agarwal have not been served with process. Thus, only two of the four Defendants—WJE and Duntemann—have moved to dismiss the Complaint. Accordingly, the term "Defendants" as used in this Order will only refer to the two movants unless otherwise noted.

4. As discussed further below, the City is not a Party to this action.

stalled the water slide as requested by the City.

Plaintiff subsequently brought this action in state court alleging professional malpractice and negligent misrepresentation against each of the Defendant engineering companies and their individual engineers. [ECF No. 1–1]. Defendants removed this action pursuant to 28 U.S.C. §§ 1332 and 1441[5] and subsequently filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 1, 6].

## II. Legal Standard and Governing Law

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Only a complaint that "states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368.

Both Parties agree that Florida law governs Plaintiff's substantive claims for professional malpractice and for negligent misrepresentation. Thus, I must determine if the Plaintiff's Complaint puts forth sufficient factual allegations to state plausible claims for relief under these two Florida causes of action.

## III. Discussion

Defendants challenge Plaintiff's Complaint on the basis that Plaintiff's claims are "unprecedented" in that Plaintiff is

5. On January 14, 2011, the Parties filed supplemental memoranda regarding subject matter jurisdiction. [ECF Nos. 37, 38]. None of the Defendants are Florida citizens, and the amount in controversy is over $75,000 because the Plaintiff alleged damages of $15,000 for each of the eight causes of action brought in its Complaint. [ECF No. 1–1; ECF No. 38 ¶¶ 4–7] Therefore this Court may exercise diversity jurisdiction over this dispute. As discussed above Plaintiff noted in its supplemental submission and during the January 19 status conference that it wishes to file an Amended Complaint and add an additional Defendant. To the extent that the Plaintiff's amendments to its Complaint have an effect on this Court's subject matter jurisdiction the Parties shall raise this issue promptly after the Plaintiff files the Amended Complaint Likewise this Order is not intended to postpone or eliminate the need for any discovery concerning the citizenship or state of incorporation of the new Defendants for purposes of subject matter jurisdiction.

"seeking to recover from Defendants what it is not entitled to recover from the City, the entity with which it had a contract." [ECF No. 6, pp. 1–2]. I will consider this argument as it applies to the economic loss rule and each of Plaintiff's causes of action below.

### a. Economic Loss Rule

As a preliminary matter, Defendants assert that all of Plaintiff's claims are barred by the economic loss rule. The Florida Supreme Court has defined the economic loss rule as follows:

The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.

The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic losses in tort. [citation omitted]. Underlying this rule is that assumption that the parties to a contract have allocated the economic risk of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla.2004).

Defendants argue that the economic loss rule prohibits Plaintiff from obtaining a better bargain for itself through tort remedies against Defendants when it would not be entitled to any damages under the terms of its contract with the City. [ECF No. 6, p. 3]. To support this argument, Defendants primarily rely on two cases involving similar facts from New Hampshire and Hawaii state court. *See Plourde Sand & Gravel Co. v. JGI E., Inc.*, 154 N.H. 791, 917 A.2d 1250, 1252, 1256–57 (2007) (refusing to impose a tort duty on engineers toward gravel supplier where contractor hired engineers to test gravel after gravel supplier completed work because imposing such a tort duty "would disrupt the contractual relationships between and among the various parties"); *Assoc. of Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 115 Hawai'i 232, 167 P.3d 225 (2007) ("[W]e agree with those jurisdictions that bar economic recovery in negligence where there was no privity of contract between the plaintiff and the defendant when allowing such would blur the distinction between contract and tort law."). As discussed above, Florida substantive law controls this dispute, so neither of these cases is binding upon me.

Under Florida law, the economic loss rule still exists, but the rule has undergone "considerable erosion" over the years. *Bay Garden Manor Condo. Assoc., Inc. v. James D. Marks Assoc., Inc.*, 576 So.2d 744, 745 (Fla. 3d DCA 1991). The Florida Supreme Court considered the applicability of the economic loss rule in disputes involving professional services and specifically engineers in *Moransais v. Heathman*, 744 So.2d 973 (Fla.1999). The plaintiff in *Moransais* was a homebuyer who had contracted with an engineering company to perform an inspection of his new home before he completed purchasing it. *Id.* at 974. He brought action for professional negligence against two individual engineers who were employed by the engineering inspection company but were not official parties to the inspection contract. *Id.* at 974–75. Despite the lack of privity between the homebuyer and the individual engineers, the Florida Supreme Court held that the economic loss rule did not bar the homebuyer's claims because the rule was "primarily intended to limit actions in the

product liability context and its application should generally be limited to those contexts or situations where policy considerations are substantially identical to those underlying the product liability-type analysis." *Id.* at 979, 983. (citation omitted).

██ Given the Florida Supreme Court's conclusion in *Moransais,* I reject the Defendants' argument that Plaintiff's claim in this case for professional negligence must be barred by the economic loss rule.[6] The *Moransais* court also noted that the economic loss rule should not generally be extended to actions based on fraudulent inducement and negligent misrepresentation. *Id.* at 981 (citing *PK Ventures, Inc. v. Raymond James & Assocs.,* 690 So.2d 1296 (Fla.1997)). Thus, I reject the Defendants' argument that Plaintiff's claim for negligent misrepresentation must be barred by the economic loss rule.

Defendants assert that even if Plaintiff's claims are not barred by the economic loss rule, Plaintiff still fails to state a claim for professional malpractice and negligent misrepresentation because the allegations in the Complaint do not amount to a *prima facie* case under either of these causes of action. I address this argument as it relates to each of the two torts below.

**b. Professional Malpractice**

██ The elements for negligence under Florida law are as follows:[7]

(1) the existence of a legal duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform this duty; (3) the injury was caused by the defendant; and (4) damages.

*Moransais,* 744 So.2d at 975 n. 3 (citing *Fla. Dept. of Corrections v. Abril,* 969 So.2d 201 (Fla.2007)).

Plaintiff alleges that it suffered damages in the amount of $15,000.00 for each cause of action it has alleged as to each of the Defendants. [ECF NO. 1–1, ¶¶ 22, 29, 33, 40]. Therefore, I find that the Plaintiff has sufficiently pleaded damages. I address each of the other three elements below.

*i. Duty*

██ It is well established that questions regarding duty of care and foreseeability as it relates to a duty of care are questions of law. *Wallace v. Dean,* 3 So.3d 1035, 1046 (Fla.2009) (noting that whether there is a duty of care "poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact"); *Williams v. Davis,* 974 So.2d 1052, 1057 n. 2 (Fla.2007) ("Establishing the existence of a duty under negligence law is a minimum threshold legal requirement that opens the courthouse doors.").

The relevant allegations taken from the Complaint concerning duty are the following:

[Plaintiff] entered into a written contract with the City [to complete the "Victory Pool Renovations" project].

. . . .

---

6. I do note that the factual context of *Moransais* is distinguishable from this case in several ways Most importantly, the engineers in *Moransais* had completed their work *before* the plaintiff purchased the home and the plaintiff in that case *was* in direct contractual privity with the engineering company if not the individual engineers. Nevertheless, these distinctions do not appear to change the Florida Supreme Court's general warning that the economic loss rule was primarily intended for products liability cases and was not meant to extinguish all negligence actions against professionals where the damages are purely economic in nature.

7. Professional malpractice claims in Florida are evaluated under the traditional negligence elements. *See Doe v. Evans,* 814 So.2d 370, 380 (Fla.2002).

After completion of the Project ... the City hired two independent engineering firms [to evaluate the Project].

. . .

At the time of providing the above professional services, both [Defendants] were aware that [Plaintiff] was the contractor which installed the alleged defective Water Slide and that any proposed advice contained therein could/would act to the detriment of [Plaintiff] or similarly situated third parties.

[Defendants] had a duty to exercise a degree of care and skill in the evaluation, testing and Reports provided to the City in regards to the Water Slide as would be exercised by other reasonably skilled engineers practicing in the State of Florida, in particular South Florida, under the same or similar circumstances.

[ECF No. 1–1 ¶¶ 8–12, 20, 31].

 I find these factual allegations insufficient to establish that Defendants had a duty toward the Plaintiff under Florida negligence principles. The statement that Defendants had a duty to exercise the same degree of care and skill as other reasonably skilled engineers in Florida under similar circumstances is a legal conclusion, which could "provide the framework" for the Complaint but must be supported by factual allegations to withstand a challenge under Rule 12(b)(6). *Iqbal*, 129 S.Ct. at 1950. Here, the factual allegations do not support or explain how Defendants owed Plaintiff a duty.

In particular, there are no allegations that Defendants exercised decisionmaking authority over Plaintiff's responsibilities on the project; no allegations that Plaintiff and Defendants ever interacted with one another; no allegation otherwise establishing a close nexus between Plaintiff and Defendants; and no allegations that the agreement between Defendants and the City was made for the benefit of Plaintiff. As for the last point, the Plaintiff has essentially alleged the exact opposite— namely, the Defendants were hired to *evaluate and critique* Plaintiff's work for the benefit of the City, not the Plaintiff. [ECF No. 6, pp. 8–9].

Plaintiff cites to paragraph 12 of its Complaint where it alleged that Defendants "were aware" that Plaintiff was the project contractor and that any advice on the project could "act to the detriment" of Plaintiff. Plaintiff notes that "foreseeability is the touchstone for imposing a duty" in Florida and argues these allegations sufficiently allege that Defendants could foresee that an inaccurate report to the City would result in damage to the Plaintiff. [ECF No. 12, pp. 9–10 (citing *AFM Corp. v. S. Bell Tel. Co.*, 515 So.2d 180 (Fla.1987)) ]. I find this argument unpersuasive in light of two Florida cases holding that independent parties separately hired to perform different tasks on a construction project like the one in this case do not owe a duty of care to one another under Florida tort law if they do not share a "close nexus."[8]

First, in *McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So.2d 47 (Fla. 2d DCA 1991), the City of Tampa entered into a construction contract with a general contractor, and the general contractor entered into various subcontracts with electricians and suppliers. *Id.* at 47 at 48. The City of Tampa separately entered into another contract

---

8. Both of these decisions involve different procedural postures than in the instant case— *McElvy* was on appeal after a judgment on a jury verdict and *E.C. Goldman* was on appeal following a judgment on the pleadings. Nevertheless, the courts in both cases determined that the defendants could not owe the plaintiffs a duty as a matter of law. As such, the cases are relevant to the inquiry in this case currently before me on a 12(b)(6) challenge.

with an architectural design firm, which was required to advise the City in interpreting and applying its design plans during construction on the project. *Id.* When one of the electrician subcontractors brought action against the architectural design firm for negligently interpreting certain provisions in the construction contract, the Second District Court of Appeals held that the architects had no duty toward the electricians. The court held that the architects' only duty was toward the City of Tampa because the city alone was responsible for making decisions that would have an impact on the electricians:

> Here, the architects contracted with the City of Tampa to draw plans and specifications and to render thereafter good faith advice to their client on a continuing basis in interpreting those plans and specifications in a consulting capacity. The architects did not agree to render the ultimate decision on the interpretation of the contracts. They knew that the client, the City, would use their advice in whatever manner it saw fit in reaching a final decision. They also should have known that the contractors, both general and subs, would be impacted by the City's final decision, although any reliance by a contractor would be on the City's final decision and not on the architect's advice. *Id.* at 49–50 (emphasis omitted).

Because ultimate decision-making power and approval concerning the electrician's work on the project rested with the City of Tampa and not with the architects who advised the city, the *McElvy* court held that the architects did not enjoy the "power of economic life and death" over the electrician and therefore the nexus between architects and electricians was insufficient to impose a duty of care. *Id.* at 48–50.

Second, in *E.C. Goldman, Inc. v. A/R/C Assoc., Inc.*, 543 So.2d 1268 (Fla. 5th DCA 1989), a school board entered into a construction contract with a general contractor that hired several subcontractors to assist, including a roofing subcontractor. After the roofing subcontractor had completed his work on the project, the school board hired an independent consultant to evaluate the roof. *Id.* at 1269. When the consultant advised the school board to reject the roofing subcontractor's work, the roofing subcontractor filed action against the consultant, alleging that the consultant owed him a duty because he "would foreseeably be harmed by [the consultant's] failure to exercise due diligence and reasonable care in performing . . . contractual obligations to the school board." *Id.* The Fifth District Court of Appeal held that under these circumstances, the consultant had no duty toward the roofing subcontractor and could not be liable for any negligence in evaluating the roof because the consultant was "outside the 'chain of construction.'" The court went on to note that the consultant "had nothing to do with the design or construction of the roof, and was only hired to render an opinion to the school board as to the condition of the roof built by plaintiff." *Id.* at 1271–73.

In affirming the trial court's judgment on the pleadings in favor of the consultant, the *Goldman* court quoted the trial court's public policy rationale for refusing to impose a duty of care from the consultant toward the roofing subcontractor:

> Public policy also dictates against the existence of a duty from the Defendants to the Plaintiff which would give rise to the pleaded cause of action for negligent rendition of an expert opinion, in that the recognition of any such cause of action would make the practice of this or any similar consulting profession a financial hazard and would inject such self-protective reservations into the expert's consulting or advisory role so as to diminish the quality of the expert's services. *Id.* at 1269.

Interpreting the Complaint in this case in the light most favorable to the Plaintiff as I must, I can only conclude that Plaintiff has not put forth allegations that establish a duty from Defendants to the Plaintiff.[9] According to the allegations in the Complaint, Defendants in this case, like the defendants in *McElvy* and *Goldman*, could only owe a duty to the governmental entity that hired them to render advice about the project; Defendants could not have held the power of economic life or death over the Plaintiff, and Defendants could not have found themselves with a sufficiently close nexus to Plaintiff to owe Plaintiff a duty of care.

### ii. Breach

In the Complaint, Plaintiff makes the following allegations that Defendants breached a duty of care toward Plaintiff:

> [Defendants] breached their duty for reasons including, but not limited to (1) failing to exercise that degree of care and skill as would be exercised by other reasonably skilled engineers practicing in the State of Florida, in particular South Florida, under the same or similar circumstances; and (2) failing to properly evaluate and test the Water Slide on the Project that would have prevented the damages incurred to [Plaintiff]. [ECF No. 1–1 ¶¶ 21, 32].

These allegations, which merely restate the relevant test for breach under Florida law, are exactly the type of allegations prohibited by binding case law. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("[A pleading must contain] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Jacobs v. Tempur–Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir.2010) ("This sparse allegation is precisely the type of bare legal conclusion that was insufficient in *Twombly* and *Iqbal*. It provides no basis on which a court could determine *how* harm to [could result]." (emphasis in original)).

Plaintiff's Complaint is void of any further allegations explaining how Defendants may have been careless in evaluating Plaintiff's work. Therefore, even though breach is typically a question for the finder of fact, *Fla. Dep't. of Corr. v. Abril*, 969 So.2d 201, 205 (Fla.2007), I conclude that in this case Plaintiff has not sufficiently pleaded breach under any interpretation of the facts put forth in the Complaint.

### iii. Causation

Plaintiff's Complaint alleges that the City rejected the Water Slide Plaintiff con-

---

**9.** The cases cited by Plaintiff do not alter this conclusion. Plaintiff relies on *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973), which stands for the general proposition that the extent of a defendant's duty toward a plaintiff is not extinguished where there is no privity of contract and that duty is defined by reference to the foreseeability of the plaintiff's injury, including whether the defendant held the "power of economic life or death" over the plaintiff. Here the Defendants could not have had the "power of economic life or death" over the Plaintiff because only the City had supervisory authority over the Plaintiff's work. Plaintiff also cites several cases that are distinguishable or otherwise unhelpful to their position. *See Southland Const., Inc. v. Richeson Corp.*, 642 So.2d 5, 8–9 (Fla. 5th DCA 1994) (holding that engineer owed contractor, with which he was not in privity of contract, a duty because contractor *used the engineer's plans on the project* and was therefore within the "circle of foreseeability of injury"); *Moransais*, 744 So.2d 973 (holding that economic loss rule did not bar homebuyer from bringing action for professional negligence against two individual engineers where homebuyer contracted with engineering firm to inspect the house he was going to buy); *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 543 (Fla.2004) (holding that "in general, actionable conduct that frustrates economic interests should not go uncompensated solely because the harm is unaccompanied by any injury to a person or other property").

structed "pursuant to the [Defendants'] reports"; that Plaintiff provided separate reports, which concluded that the Water Slide was in fact safe; and that the City still required Plaintiff to rebuild and install a new slide "due to its public disclosure of [Defendants'] findings and evaluations." [ECF No. 1–1 ¶¶ 13–15]. Construing these allegations in the light most favorable to the Plaintiff, I conclude that Plaintiff has only alleged that it suffered damages because of *the City's* decision to rely on the Defendant's engineering reports and because of *the City's* decision to publicly disclose Defendant's reports. In other words, the Plaintiff has merely alleged that the City's decisions and actions—not any decisions and actions of Defendants—caused it harm.

This scenario is no different than the facts in *Goldman* where the Fifth District Court of Appeal concluded that the plaintiff could not have been harmed by the defendant—consultant's report to the school board regarding the plaintiff's roofing work but that any harm could only have been the result of the school board's subsequent decision to withhold payment to the plaintiff based on the defendant's report. *See Goldman*, 543 So.2d at 1271 ("In the instant case, not only is there no nexus between plaintiffs and the school board's consultant, there is no proximate cause. Plaintiffs were not harmed by the school board's refusal to pay based on the opinion. There is nothing in the record to indicate that the school board was bound by the consultant's report, or that the plaintiffs relied on or were intended to be influenced by the consultant's report."). Therefore, although causation is also typically a question for the finder of fact,

*Abril*, 969 So.2d at 205, I must agree with Defendants that under any interpretation of the facts put forth in the Plaintiff's Complaint, only the City could have been responsible for any harm caused to Plaintiff.

For all of these reasons, I find that Plaintiff's Complaint fails to state a claim for professional malpractice upon which relief could be granted.

### c. Negligent Misrepresentation

The Florida Supreme Court has adopted § 552 of the Restatement (Second) of Torts for actions in negligent misrepresentation against professionals, including engineers. *First Fla. Bank v. Max Mitchell & Co.*, 558 So.2d 9 (Fla.1990). The test is as follows:

(1) One who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information *for the guidance of others* in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of *persons for whose benefit and guidance he intends to supply the information* or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Id.* at 12 (emphasis added).[10]

---

10. The general standards for negligent misrepresentation under Florida law are similar to the standards for professionals. *See Bag-*

*gett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993) ("To prove negligent misrepresentation, it must be

■ The Eleventh Circuit has also noted that because actions for negligent misrepresentation in Florida sound in fraud rather than negligence, the pleading requirements contained in Federal Rule of Civil Procedure 9(b) apply to such actions. *See Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir.1993); *see also Johnson v. Amerus Life Ins. Co.*, Case No. 05–61363, 2006 WL 3826774, at *3–4 (S.D.Fla. Dec. 27, 2006). The text of Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

The relevant allegations in the Complaint are the following:

[Defendants], in the course of [their] business or profession, and in performing professional engineering services on the Project, supplied information for the guidance of the City, [Plaintiff] and other similarly situated third parties in their business transactions.

The information provided by [Defendants], including but not limited to the Reports as to the Water Slide, were false and/or materially inaccurate.

[Defendants] failed to exercise due care or competence to ensure the truth and accuracy of the above information and Reports, and failed to exercise reasonable care or competence in communicating the same.

At the time of providing such false and/or materially inaccurate statements, [Defendants] *knew the City would rely on such statements* and supply same to [Defendants].

In performing such professional engineering services, [Defendants] knew that the information provided would influence the City and have an impact on [Plaintiff].

[Plaintiff] suffered pecuniary damages in justifiable reliance on the false statements provided by [Defendants].

[ECF No. 1–1 ¶¶ 23–29, 34–40 (emphasis added) ].

■ I find that these allegations fail to state a claim for negligent misrepresentation for three reasons. First, under § 552(2)(a), liability for this cause of action is limited to losses suffered by people for whose "benefit and guidance" a defendant intended to supply false information. Plaintiff argues that despite the lack of contractual privity between itself and Defendants, it has stated a cause of action for negligent misrepresentation because it had a "special relationship" with Defendants. [ECF No. 12, pp. 11–13]. But Plaintiff does not explain how the allegations in its Complaint establish such a "special relationship." As discussed above, the language in the Complaint actually stands for the exact opposite. According to the Complaint, Defendants were hired to *evaluate and critique* Plaintiff's work at the request of and for the benefit of *the City, not the Plaintiff.* Other than Plaintiff's blanket assertion that it was the intended beneficiary of Defendant's report, Plaintiff fails to explain or overcome this inconsistency.[11]

shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and injury resulted to a party acting in justifiable reliance on upon the misrepresentation.").

11. The cases cited by Plaintiff are either distinguishable or do not provide further ex-

planation or grounds to overcome this contradiction. *See Hewett–Kier Constr., Inc. v. Lemuel Ramos & Assoc., Inc.*, 775 So.2d 373, 374–75 (Fla. 4th DCA 2000) (holding that a "special relationship" existed between a general contractor and an architect even though they were not in privity of contract because the general contractor agreed to construct a project in accordance with design documents specifically prepared by the architect for that purpose); *Southland*, 642 So.2d at 8–9 (holding that engineer owed

Second, Plaintiff provides no arguments why its allegations about the false nature of Defendants' reports should not be dismissed as incomplete. Other than the allegation that Defendants' reports were "false and/or materially inaccurate," Plaintiffs Complaint contains no further allegations providing details about how and to what extent the Defendants' reports somehow misrepresented the quality of Plaintiff's work. I find these allegations insufficient to meet the general pleading standards under Federal Rule of Civil Procedure 8, much less sufficient to meet the heightened pleading standards set forth in Rule 9(b).[12]

Third, I find the allegations in Plaintiff's Complaint concerning reliance inadequate under a 12(b)(6) analysis for two reasons. In the first place, the Complaint does not make it clear that *the Plaintiff* relied on Defendants' reports. Although the Complaint contains the allegation that the Plaintiff "suffered pecuniary damages in justifiable reliance on the false statements provided by [Defendants]," this is nothing more than a legal conclusion—which, without further factual support, is prohibited by *Twombly* and Eleventh Circuit case law as set forth above. Further, the allegations in Plaintiff's Complaint directly contradict its theory that it relied on the Defendants' reports. The Complaint asserts that the Defendants "knew *the City would rely* on [Defendants'] statements." The Complaint further alleges that the City's reliance on Defendants' reports would "have an impact" on the Plaintiff, but even this allegation does not change the identity of

the party that relied—namely, the City. According to the allegations in the Complaint, the only thing *the Plaintiff* relied on was not the content of Defendants' reports, but rather the City's independent decision requiring Plaintiff to redo its work after the City considered reports from both the Plaintiff and the Defendants. *See McElvy,* 582 So.2d at 49–50 ("[The defendant—architects] also should have known that the [plaintiff] contractors, both general and subs, would be impacted by the City's final decision although any reliance by a contractor would be on the City's final decision and not on the architect's advice.").

In addition, assuming all of the allegations in Plaintiff's Complaint are true, Plaintiff fails to clarify how it could have possibly "relied" on Defendants' report when it alleges that the City only hired Defendants to evaluate the Plaintiff's work *after Plaintiff had already completed the project.* Just because Plaintiff alleged that the City forced it to redo that work based on Defendants' report is not tantamount to an allegation that Plaintiff "relied" on that report. *See Goldman,* 543 So.2d at 1272–73 & n. 7 (holding that where school board hired independent consultant to evaluate roofing subcontractor's work *after* subcontractor had completed his job, the consultant's "opinion was not, obviously, relied on by [the roofing subcontractor] nor was it intended to be relied on by or influence the [roofing subcontractor]"). According to these allegations, I do not find it plausible that Plaintiff could have relied on a report, which was created

---

contractor, with which he was not in privity of contract, a duty because contractor *used the engineer's plans on the project* and was therefore within the "circle of foreseeability of injury"); *City of Tampa v. Thornton–Tomasetti, P.C.,* 646 So.2d 279, 282–83 (Fla. 2d DCA 1994) (refusing to permit city to recover from engineers for work on a project

where the parties were not in privity of contract because there was not a "close nexus" between the parties).

12. In its opposition, Plaintiff failed to address the applicability of Rule 9(b)'s heightened pleading requirements to this action.

after it had completed its work on the project. *See Jacobs,* 626 F.3d at 1342 ("[U]nder the pleading standards of *Twombly* and *Iqbal,* plausibility is the key.").

For all of these reasons, I hold that Plaintiff's Complaint fails to state a claim for negligent misrepresentation upon which relief can be granted. Accordingly, it is hereby ORDERED AND AD-JUDGED that

1. Defendants' Motion to Dismiss, [ECF No. 6], is **GRANTED.**

2. Plaintiff's claims for professional malpractice and negligent misrepresentation are **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff is permitted to file an Amended Complaint on or before **Friday, February 11, 2011.**

4. Oral argument set for Friday, January 21, 2011 is **CANCELLED.**

5. All other hearings are **CANCELLED.**

6. All pending motions are **DENIED AS MOOT.**